John R. D'ALESSIO and D'Alessio
Securities, Inc., Plaintiffs,

v.

NEW YORK STOCK EXCHANGE,
INC., Richard A. Grasso, Edward A.
Kwalwasser, and Robert J. McSwee-
ney, Defendants.

No. 00 Civ. 269(JSR).

United States District Court,
S.D. New York.

Sept. 29, 2000.

Dominic F. Amorosa, New York City, for Plaintiffs.

Debra M. Torres, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Defendants.

## OPINION AND ORDER

RAKOFF, District Judge.

The basic question presented by defendants' pending motion to dismiss is whether employees of the New York Stock Exchange who, pursuant to statutory delegation, perform regulatory functions that would otherwise be performed by the Securities and Exchange Commission are entitled to the same immunities from suit to which comparable Commission employees would be entitled. The short answer is yes.

The pertinent facts are as follows. Plaintiff John R. D'Alessio, formerly a "floor broker" on the New York Stock Exchange (the "Exchange"), was indicted in 1998 for willfully violating various statutory prohibitions on a floor broker's trad-

ing for his own account or for an account in which he exercises investment discretion, see 15 U.S.C. §§ 78k & 78ff; see also United States v. Oakford Corp., No. 98 Cr. 144, 1999 WL 1201725 (S.D.N.Y. Dec. 13, 1999). Parallel charges were brought against D'Alessio and his company, D'Alessio Securities Inc., by the United States Securities and Exchange Commission (the "Commission") and also by the Exchange. While the criminal charges were ultimately dismissed pursuant to a deferred prosecution agreement, and while the Commission charges remain unresolved, the Exchange charges ultimately led to D'Alessio's being barred from the floor of the Exchange, with consequent economic loss to D'Alessio and his company. See Complaint ¶ 82.

Plaintiffs then commenced the instant action against the Exchange and various officials thereof, alleging that the unlawful trading that led to D'Alessio's indictment, disbarment, and other legal troubles was itself the unwitting result of the defendants' dissemination of a knowingly incorrect interpretation of the applicable statutory and regulatory prohibitions and of the defendants' knowing but secret encouragement of the very kind of unlawful trading for which plaintiffs were disciplined. Plaintiffs further complained that the defendants fraudulently concealed these facts from the Commission and the United States Attorney's Office, while actively conniving in plaintiffs' being charged. Based on these and related allegations, plaintiffs brought claims of injurious falsehood, fraudulent deceit and concealment, negligent misrepresentation, and, as to the Exchange, breach of contract.

█ Defendants then moved for judgment on the pleadings on several grounds, only one of which the Court need now reach: defendants' claim of immunity from suit. The issue is largely determined by the Second Circuit's decision in Barbara v. New York Stock Exchange, 99 F.3d 49 (2d Cir.1996), which accorded absolute immunity to the Exchange from a suit for dam-

ages arising from the allegedly unlawful conduct of an Exchange disciplinary proceeding. Among other rationales, *Barbara* relied on the fact that, under the federal securities laws, the Exchange "performs a variety of regulatory functions that would, in other circumstances, be performed by a government agency," namely, the Commission. *Barbara,* 99 F.3d at 59. *Mutatis mutandis,* the Exchange and its employees, in performing these functions, should be accorded the same absolute immunity that would be afforded the Commission and its employees in parallel circumstances. *See Austin Mun. Securities, Inc. v. National Ass'n of Sec. Dealers,* 757 F.2d 676, 688 (5th Cir.1985) (extending absolute immunity to another national securities exchange and its employees). This is a matter not simply of logic but of intense practicality, since, in the absence of such immunity, the Exchange's exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits. *See Barbara,* 99 F.3d at 59; *Austin,* 757 F.2d at 688.

■ Plaintiffs seek to distinguish *Barbara* from the instant lawsuit in several respects. First, they note that while *Barbara* involved misconduct in connection with disciplinary proceedings, the misconduct alleged in the instant lawsuit also includes improper interpretations of federal securities laws and allegedly duplicitous conduct in connection with providing information about plaintiffs to the Commission and the U.S. Attorney's Office. But the interpretive and referral functions of the Exchange are just as quasi-governmental as its disciplinary functions, and hence the same immunities attach. *See, e.g., Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.,* 159 F.3d 1209, 1214–15 (9th Cir.1998).

Second, they argue that even if the Exchange itself is entitled to absolute immunity, its officers are entitled only to qualified immunity, the bounds of which were here exceeded. But "certain public functions require a greater degree of protec-

tion than qualified immunity can provide," *Barbara,* 99 F.3d at 58, and this is equally as true of the Exchange officials' interpretive and referral functions as of their disciplinary functions. To prevent the placing of endless obstacles in path of the effective fulfillment of such functions, Exchange employees are therefore entitled to absolute immunity for any actions that are within the "outer perimeter" of the performance of such functions. *McManus v. McCarthy,* 586 F.Supp. 302, 304 (S.D.N.Y. 1984), *quoting Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *see Austin,* 757 F.2d at 689; *Mandelbaum v. New York Mercantile Exchange,* 894 F.Supp. 676, 679–80 (S.D.N.Y. 1995); *Friedman v. Young,* 702 F.Supp. 433, 435 (S.D.N.Y.1988).

■ Nor may a litigant avoid the bar of this immunity simply by making allegations of bad faith, conspiracy, or malice. *See, e.g., In re Olick,* No. 99–cv–5128, 2000 WL 354191 (E.D.Pa. Apr.4, 2000); *Partnership Exchange Securities Co. v. National Ass'n of Securities Dealers, Inc.,* No. C–96–2792, 1997 WL 448164, at *5 (N.D.Cal. July 3, 1997); *Gugliaro v. New York Coffee, Sugar, & Cocoa Exch., Inc.,* No. 96 Civ. 4942, 1997 WL 109442, at *3 (S.D.N.Y. Mar. 11, 1997). The doctrine that acts outside the scope of an official's authority are ineligible for absolute immunity is reserved for those acts that fall outside the official's authority categorically rather than by the specifics of their performance. *See, e.g., Burns v. Reed,* 500 U.S. 478, 492–96, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The allegations at issue here, however, relate to the defendants' development and promulgation of interpretations of statutory and regulatory requirements, the dissemination and implementation of these interpretations, and the provision of information to government agencies, all of which are categories of action well within the perimeter of the defendants' quasi-governmental duties.

Finally, plaintiffs argue that *Barbara* should be narrowly construed because it is

in tension with the Second Circuit's decision in *United States v. Solomon*, 509 F.2d 863 (2d Cir.1975), in which the Court of Appeals held the Fifth Amendment privilege against self-incrimination inapplicable to the Exchange's questioning of representatives of a member firm who were under investigation for violating certain record-keeping requirements that were separately mandated by both Commission regulations and Exchange rules. In *Solomon*, Judge Friendly, in a typically erudite opinion, recounted the Exchange's long history of "private" self-regulation antedating the enactment of the federal securities laws, and held that the Fifth Amendment—most of the provisions of which "are incapable of violation by anyone except government in the narrowest sense," *id.* at 867—did not apply to disciplinary activities designed to protect the Exchange's own private regulatory interests, even if the conduct under investigation also violated federal law. *See id.* at 869.

Thus, while some of the broader dicta in *Solomon* are not easily reconciled with some of the statements in *Barbara*, what *Solomon* sought to emphasize was the distinction between the Exchange's quasi-governmental duties and its private functions. The distinction is easily seen, for example, in the recent case of *Desiderio v. National Ass'n of Securities Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir.1999), where the Court of Appeals, citing *Solomon*, found that there was no "state action" in the enforcement by a national securities exchange of its internal requirement that brokers sign a mandatory arbitration clause. Other cases may present closer calls, but this case is not one of them: for even though plaintiffs allege that the motivation for the alleged misconduct arose from the Exchange's private interests, the misconduct itself related to the exercise, properly or improperly, of the Exchange's public functions. Accordingly, it is *Barbara*, not *Solomon*, that is relevant here.

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted, and the Complaint is dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.