Michael A. **FRAYLER and Touchdown Securities, Inc.,** Plaintiffs,

v.

**NEW YORK STOCK EXCHANGE, INC., Richard A. Grasso, Edward A. Kwalwasser, Robert J. McSweeney, and Brian M. McNamara,** Defendants.

No. 00 Civ. 5404(JSR).

United States District Court,
S.D. New York.

Oct. 27, 2000.

namely the individual defendants' personal involvement or entitlement to qualified immunity

Michael Frayler, Marlboro, NJ, pro se.

Debra M. Torres, Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants.

## OPINION AND ORDER

RAKOFF, District Judge.

Since every case is different, the question for a court is whether the difference makes a difference. In *Barbara v. New York Stock Exchange*, 99 F.3d 49 (2d Cir. 1996), the Court of Appeals concluded that a lawsuit filed in state court that asserted various common law causes of action prem-

ised on alleged abuses in the conduct of the internal disciplinary proceedings of the New York Stock Exchange (the "Exchange") did not implicate a federal interest sufficient to warrant removal to federal court, even though the proceedings were sufficiently "quasi-public" to entitle the Exchange to absolute immunity. The instant suit, by contrast, asserts common law causes of action premised on an alleged conspiracy by the Exchange and its officers to purposely misconstrue § 11(a) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. § 78k(a), and to encourage violations of that section by "floor brokers" on the Exchange and thereby "cause" defendant's federal arrest and conviction. The Court has previously determined in the companion case of *D'Alessio v. New York Stock Exchange*, Inc., No. 00 Civ. 269, 2000 WL 1458801, 2000 U.S.Dist. LEXIS 14256 (S.D.N.Y. Sept. 29, 2000), that these differences do not yield a different result from *Barbara* so far as absolute immunity is concerned. The Court now determines that these differences do, however, dictate a different result from *Barbara* so far as removal is concerned.

■ The pertinent facts are as follows. On July 16, 1998, plaintiff Michael Frayler, formerly a floor broker on the Exchange, pleaded guilty to criminal violations of the Exchange Act, including, *inter alia*, violation of § 11(a) of that Act, which prohibits certain kinds of trading by a floor broker.[1] Nearly two years later, on June 23, 2000, Frayler and an entity named "Touchdown Securities, Inc." filed what they denominated a "Pro Se Complaint" in New York State Supreme Court.[2] *See Frayler v. New York Stock Exchange, Inc.*, No. 00114041 (N.Y.Sup.Ct., County of New

1. Frayler's conviction was subsequently affirmed by the Court of Appeals. *United States v. Frayler*, No. 00–1078, 2000 U.S.App. LEXIS 24845 (2d Cir. Oct. 2, 2000).

2. Since, however, a corporation cannot appear *pro se* in either federal or New York State courts, *Jacobs v. Patent Enforcement*

*Fund, Inc.*, 230 F.3d 565, ——, 2000 WL 1580997, *3, 2000 U.S.App. LEXIS 24840, at *9–*10 (2d Cir.2000); N.Y.C.P.L.R. 321(a); *Hilton Apothecary, Inc. v. State*, 89 N.Y.2d 1024, 657 N.Y.S.2d 595, 679 N.E.2d 1075 (1997), the purported *pro se* appearance of Touchdown Securities, Inc. was at all times a nullity and will be treated as such.

York, June 23, 2000). The Complaint was copied, nearly verbatim, from a civil complaint drafted by counsel for John D'Alessio and D'Alessio Securities, Inc., which had previously been removed from the New York State courts and was then pending before this Court, *see D'Alessio v. New York Stock Exchange,* No. 00 Civ. 269.

Specifically, Frayler's Complaint alleged that the Exchange and certain of its officers (collectively the defendants here) "conspired to violate, among other laws, § 11(a) and Rule 11a–1 [of the Securities and Exchange Commission] . . . [by] wilfully and knowingly agree[ing] among themselves and others to permit illegal trading on the floor [of the Exchange] by [floor] brokers and to encourage other [floor] brokers to engage in this illegal activity." Complaint ¶ 20. To this end, the Complaint alleged, the defendants concocted a "phony interpretation" of § 11(a), on which Frayler allegedly relied to his detriment. Complaint ¶ 28. Finally, the Complaint alleged, when the United States Attorney's Office and the Securities and Exchange Commission began investigating violations of § 11(a) on the part of Frayler and other floor brokers, the defendants willfully concealed their own "full involvement over the years in approving [violations of § 11(a) ] and in interpreting [the relevant laws] in a way that permitted [such violations]," Complaint ¶ 73, and thereby "caused" plaintiff's criminal arrest and prosecution. Complaint ¶ 77.

Based on these and similar allegations, the Complaint asserted three tort claims against all defendants, to wit, injurious falsehood, fraudulent deceit, and negligent misrepresentation, and also asserted a breach of contract claim against the Exchange. Complaint ¶¶ 94–97. Promptly after the Complaint was filed in New York State court, the defendants removed the case to federal court, pursuant to 28 U.S.C. § 1441. Plaintiff then filed the instant motion to remand. For the reasons that follow, the motion must be denied.

■ Section 1441 permits removal of a case to federal court whenever any claim or cause of action in the lawsuit is "within the jurisdiction conferred by section 1331 of [Title 28]." Section 1331, in turn, confers federal jurisdiction over claims "arising under" the Constitution, laws, or treaties of the United States. The "arising under" language has been interpreted by the Supreme Court to include, *inter alia,* cases where "the plaintiff's right to relief [under state law] necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *see Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199–202, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

■ Here, the central premise of plaintiff's three tort claims—indeed, of the entire Complaint—is that the defendants themselves violated and purposely encouraged plaintiff and others to violate § 11(a) of the Exchange Act by promulgating erroneous and misleading interpretations of that statutory provision. Complaint ¶ 20. Thus, even assuming *arguendo* that defendants' alleged violation of § 11(a) would not itself give rise to a private right of action, *see Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), "the federal issue [here] is decisive because upon [the federal statute's] construction [depends] the vindication of rights and definition of relationships" at the heart of the lawsuit. *West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188, 196 (2d Cir.1987). In such circumstances, "the federal ingredient . . . is sufficiently substantial to confer the arising under jurisdiction." *Id.*

The federal interest here involved is vastly more significant than the alleged federal issue at stake in *Barbara. See Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229 (suggesting that "our § 1331 decisions can be understood as an evaluation of the nature of the federal interest at

stake."). In *Barbara,* the underlying substantive issue was whether the Exchange had conducted its quasi-public disciplinary proceedings consistently with its own internal rules and its contractual obligations to its members, chiefly matters of state contract law. Here, by contrast, the question of whether the Exchange properly interpreted § 11(a) of the Exchange Act is wholly a matter of federal law and, indeed, a matter of intense federal concern given the importance of federal regulation of the stock market. Congress expressly recognized this importance when it gave the federal courts exclusive jurisdiction over violations of the Exchange Act. 15 U.S.C. § 78aa. Similarly, courts in other federal circuits have implicitly recognized this importance in holding that state law claims against national securities exchanges are preempted by the Exchange Act. *See Barbara,* 99 F.3d at 59 (citing cases). With these federal concerns so prominently figuring in the instant case, removal under § 1441 is fully justified.[3]

Accordingly, plaintiffs' motion to remand is denied. In light of that conclusion, defendants may now proceed with the motion they previously sought to file seeking dismissal of the instant case in light of *D'Alessio.*[4] Specifically, defendants' moving papers are to be served by November 6, 2000, plaintiff's answering papers are to be served by November 20, 2000, and defendants' reply papers are to be served by November 29, 2000, at which time defendants' counsel will file a full set of motion papers with the Clerk of the Court and deliver a courtesy copy to chambers. The Court will notify the parties if it believes oral argument is necessary.

SO ORDERED.

---

**3.** Removal might arguably have also been available under 28 U.S.C. § 1442(a)(1), which provides for removal of cases in which federal agencies, officers, or those "acting under" such officers are sued for an act made under color of their federal authority. While *Barbara* rejected § 1442 as a basis for removal by the Exchange, it did so in reliance on *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991), which was effectively overruled by a congressional amendment to § 1442 shortly after *Barbara* was decided. However, since defendants in the instant case do not assert § 1442 as a basis for removal, the Court does not reach this issue.

**4.** Although no challenge to removal was made in *D'Alessio,* the Court, in view of plaintiff's motion in the instant case, has *sua sponte* reexamined its jurisdiction in *D'Alessio* and concludes that jurisdiction lies in that case for the same reasons expressed here.