**John R. D'ALESSIO, D'Alessio Securities, Inc., Plaintiffs–Appellants,**

v.

**NEW YORK STOCK EXCHANGE, INC., Richard A. Grasso, Edward A. Kwalwasser, and Robert J. McSweeney, Defendant–Appellees.**

No. 00–9320.

United States Court of Appeals, Second Circuit.

Argued May 2, 2001.

Decided July 19, 2001.

Before: MESKILL and KEARSE, Circuit Judges, and SQUATRITO,* District Judge.

MESKILL, Circuit Judge:

Plaintiffs-appellants John R. D'Alessio and his wholly owned company D'Alessio Securities, Inc. (collectively "D'Alessio") appeal from the September 29, 2000 judgment of the United States District Court for the Southern District of New York, Rakoff, J., dismissing the complaint against defendants-appellees the New York Stock Exchange, Inc., Richard A. Grasso, Edward A. Kwalwasser and Robert J. McSweeney (collectively the "NYSE")[1] on the ground that the NYSE enjoyed absolute immunity from a suit seeking monetary damages arising from the NYSE's allegedly improper exercise of the regulatory and adjudicatory functions delegated to it under the Securities Exchange Act of 1934, as amended (Exchange Act). Because we conclude that the district court had jurisdiction over the present action and that the NYSE is entitled to immunity from suits for damages that arise out of its conduct as alleged in the complaint, we affirm the judgment of the district court in its entirety.

## BACKGROUND

The district court set forth in detail the facts relevant to this dispute in its opinion and order, see D'Alessio v. N.Y. Stock Exch., 125 F.Supp.2d 656, 657–58 (S.D.N.Y.2000), familiarity with which is assumed. We restate here only those facts relevant to the appellate arguments or otherwise necessary for context.

Dominic F. Amorosa, New York City, for Appellants.

Debra M. Torres, New York City (Harvey L. Pitt, Daniel E. Loeb, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for Appellees.

* Hon. Dominic J. Squatrito, United States District Judge for the District of Connecticut, sitting by designation.

1. At all relevant times, Grasso was the Chairman of the NYSE, Kwalwasser was a Group Executive Vice President of the NYSE, responsible for Market Surveillance, Enforcement and Member Firm Regulation, and McSweeney was a senior Vice President of the NYSE in charge of the Market Surveillance division.

In *Barbara v. New York Stock Exch.*, 99 F.3d 49 (2d Cir.1996), we detailed the role the NYSE plays vis-a-vis the Securities and Exchange Commission (SEC) in the regulation of securities transactions executed on the floor of the NYSE and the initiation of disciplinary proceedings in cases where a member person or firm fails to comply with the Exchange Act and the rules and regulations promulgated thereunder:

> The [NYSE] is a nonprofit New York corporation registered with the [SEC] as a national securities exchange pursuant to section 6 of the [Exchange Act], 15 U.S.C. § 78f. As an association of securities dealers, the [NYSE] authorizes its members to effectuate securities transactions on its auction market, known as the [NYSE] floor. Under the [Exchange] Act, the [NYSE] is a "self-regulatory organization [ (SRO) ]," *see* 15 U.S.C. § 78c(a)(26), which means that it has a duty to promulgate and enforce rules governing the conduct of its members, *see id.* §§ 78f(b), 78s(g). These rules are subject to SEC approval. *See* 15 U.S.C. § 78s(b). In accordance with the statutory scheme, the [NYSE] conducts disciplinary proceedings when a member, or a person associated with a member, is suspected of violating federal securities laws or internal [NYSE] rules or regulations. *See Id.* § 78f(d). The [Exchange] Act requires that these disciplinary proceedings be conducted in compliance both with the [Exchange]

Act and with the [NYSE's] rules and regulations. *See Id.* § 78s(g)(1). Notice of any final disciplinary sanction imposed by the [NYSE] must be provided to the SEC, *see id.* § 78s(d)(1), and the imposition of a sanction is subject to review by the SEC on its own motion or at the instance of an aggrieved party, *see id.* § 78s(d)(2).

*Id.* at 51 (internal citation omitted); *see also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1212 (9th Cir.1998) ("The Exchange Act requires self-regulatory organizations to comply not only with the Exchange Act, but also with the association's own rules."). The failure of a SRO to comply with these requirements carries serious repercussions: the SRO risks being subject to the SEC's broad sanctioning power that includes suspension or revocation of the SRO's registration, or a "censure or ... limitation[ ] upon the activities, functions, and operations of [the SRO]." 15 U.S.C. § 78s(h)(1).

The instant appeal arises out of investigations conducted by the SEC and the United States Attorney's Office targeting groups of independent floor brokers, commonly referred to as "$2.00 brokers," who regularly execute trades on the NYSE floor. The government suspected some of these brokers of violating section 11(a) of the Exchange Act and SEC Rule 11a–1 promulgated thereunder, as well as various rules of the NYSE,[2] "by engaging in illegal

---

**2.** Section 11(a) provides, in pertinent part, that "[i]t shall be unlawful for any member of a national securities exchange to effect any transaction on such exchange for its own account, the account of an associated person, or an account with respect to which it or an associated person thereof exercises investment discretion." 15 U.S.C. § 78k(a)(1). Rule 11a–1, which regulates floor trading, provides, in pertinent part, that

[n]o member of a national securities exchange, while on the floor of such exchange, shall initiate, directly or indirectly, any transaction in any security admitted to trading on such exchange, for any account in which such member has an interest, or for any such account with respect to which such member has discretion as to the time of execution, the choice of security to be bought or sold, the total amount of any security to be bought or sold, or whether

schemes of trading on the NYSE floor while sharing in the profits or losses generated from those trades." *In re N.Y. Stock Exch.*, Exchange Act Release No. 34–41574, 1999 WL 430863, at *2 (June 29, 1999). As part of its investigation, the government examined the trading activities of D'Alessio, who functioned as a floor broker at the NYSE during this time. The investigations focused specifically on D'Alessio's profit-sharing arrangement with The Oakford Corporation (Oakford), a former broker-dealer member of the National Association of Securities Dealers and the American Stock Exchange.

The mechanics of the trading scheme were not complicated: D'Alessio would purchase a particular security on behalf of a customer and thereafter sell that same security at a higher price, resulting in a net gain for the customer. D'Alessio received as a commission a percentage of the profits generated on these "flip" trades based on the spread between the bid and ask prices for the securities, typically one-eighth of a point on each share of stock. D'Alessio's exact share was determined by the individual agreements that he maintained with his customers. While there was no guarantee that these "flip" trades would result in a profit, as a floor broker, D'Alessio enjoyed a distinct advantage over other market participants because he had access to information regarding the performance of a particular security and the direction of its share price.

As a result of these activities, in February 1998, the United States Attorney's Office indicted D'Alessio for willfully violating various statutes and regulations that

prohibited a floor broker from trading for his own account or for an account in which he exercised investment discretion. The SEC and the NYSE brought parallel charges against D'Alessio arising out of the same conduct. Specifically, the government charged D'Alessio with illegally sharing in the profits generated by trades he executed on the floor of the NYSE on behalf of Oakford.[3] *See D'Alessio*, 125 F.Supp.2d at 657. Although the criminal charges ultimately were dismissed pursuant to a deferred prosecution agreement, the NYSE charges ultimately led to D'Alessio's suspension from the floor of the NYSE, resulting in economic losses to D'Alessio.

In December 1999, D'Alessio, personally, and his company, D'Alessio Securities, Inc., commenced an action against the NYSE in the Supreme Court of New York, New York County, alleging that the NYSE and various senior officials employed by the NYSE conspired to violate applicable statutory and regulatory prohibitions governing unlawful trading, to wit, section 11(a), Rule 11a–1 and various rules of the NYSE, by "concoct[ing] a phoney interpretation" of these provisions and knowingly disseminating that incorrect interpretation to the detriment of D'Alessio and other floor brokers. D'Alessio contends that he relied on the NYSE's interpretation at the time he engaged in trading practices that were later determined to be illegal. D'Alessio alleges that the NYSE, in an effort to keep its activities secret and curry favor with law enforcement authorities, assisted the United

---

any such transaction shall be one of purchase or sale.
17 C.F.R. § 240.11a–1. The NYSE has promulgated similar rules, cited by D'Alessio throughout his complaint, barring these and similar practices. *See* NYSE Rules 90(a); 91; 92(a); 95; 111(a); and 352(c).

**3.** Under his profit sharing agreement with Oakford, D'Alessio received 70% of the trading profits for trades he executed on behalf of the Oakford account.

States Attorney's Office and the SEC in their investigation and prosecution of D'Alessio by providing them with "false, misleading and inaccurate information about ... D'Alessio." D'Alessio further alleges that the NYSE failed to disclose to these authorities that it had "approved and encouraged the practice of flipping," the specific type of unlawful trading for which D'Alessio had been charged. D'Alessio attributes the NYSE's inaction to the substantial fees earned by the NYSE and clearing members on the high volume of "flipped" trades and "a desire to increase the daily volume of trading activity on the NYSE." D'Alessio contends that, as a result of the NYSE's alleged misconduct, he has incurred legal difficulties and has been unable to work as a floor broker on the NYSE.

Based on these and related allegations, D'Alessio brought numerous tort claims against the NYSE and its various officers for injurious falsehood and concealment, fraudulent deceit and concealment, negligent misrepresentation and concealment, and, as to the NYSE only, breach of contract. In connection with these claims, D'Alessio sought compensatory and punitive damages.

On January 13, 2000, the NYSE filed a notice of removal of the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441. Notably, D'Alessio did not challenge removal of the action to federal court at that time or otherwise challenge the district court's jurisdiction over the action. Indeed, the issue of federal jurisdiction was not raised until the district court raised it *sua sponte* in a related case

also before the district court.[4] *See Frayler v. N.Y. Stock Exch.*, 118 F.Supp.2d 448 (S.D.N.Y.2000). Thereafter, the NYSE moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Relying on our decision in *Barbara*, the district court granted the NYSE's motion and dismissed the complaint with prejudice on the ground that the NYSE and its senior officials enjoyed absolute immunity in the performance of regulatory functions delegated to them under the Exchange Act. *See D'Alessio*, 125 F.Supp.2d at 657–59. This appeal followed.

## DISCUSSION

The present appeal raises two questions: first, whether the instant action implicates a federal interest sufficient to sustain removal of the action to federal court, and second, "whether employees of the [NYSE] who, pursuant to statutory delegation, perform regulatory functions that would otherwise be performed by the [SEC] are entitled to the same immunities from suit to which comparable [SEC] employees would be entitled." *Id.* at 657. The district court answered both questions in the affirmative. We agree, and therefore affirm the district court's decision.

### A. *Standard of Review*

"When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo.*" *Phillips v. Saratoga Harness Racing*, 240 F.3d 174, 177 (2d Cir.2001) (quotation marks omitted); *see also Viacom Int'l v.*

---

4. The district court analyzed the question of federal jurisdiction over D'Alessio's claims in a separate action, *Frayler v. N.Y. Stock Exch.*, 118 F.Supp.2d 448 (S.D.N.Y.2000), which contained allegations "copied, nearly verbatim" from the complaint filed by D'Alessio.

*Id.* at 450. The district court held that removal was proper in *Frayler*, and adopted those reasons as a basis for concluding that it had subject matter jurisdiction over D'Alessio's claims. *See id.* at 451 n. 4.

*Kearney,* 212 F.3d 721, 725–26 (2d Cir.), *cert. denied,* 531 U.S. 1051, 121 S.Ct. 655, 148 L.Ed.2d 558 (2000); *cf. Shafii v. British Airways, PLC,* 83 F.3d 566, 570 (2d Cir.1996) ("We review *de novo* a district court's denial of a motion to remand."). We review *de novo* the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(c). *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Id.; see also Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). "We may dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Burnette,* 192 F.3d at 56 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## B. *Whether a Substantial Federal Interest Exists*

Before we address the merits of the NYSE's claim of immunity from suit, we first must consider whether the action was properly removed to federal court.

Pursuant to 28 U.S.C. § 1441(b), a state court defendant may remove a case to federal court "only if the plaintiff's claims could originally have been brought there." *Barbara,* 99 F.3d at 53. Here, the NYSE sought removal premised on federal question jurisdiction under 28 U.S.C. § 1331 and/or section 27 of the Exchange Act, 15 U.S.C. § 78aa, based on allegations that the NYSE conspired to violate, and encouraged D'Alessio to violate, section 11(a) of the Exchange Act and SEC Rule 11a–1 promulgated thereunder, as well as various rules of the NYSE.

"[T]he propriety of the removal in this case thus turns on whether the case falls within the original 'federal question' jurisdiction of the federal courts." *Merrell Dow Pharms. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (*Merrell Dow*). Section 1331 invests in the district court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." While "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. 3229 (footnote omitted), a case is deemed to "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (noting that "[l]eading commentators have suggested that for purposes of § 1331 an action 'arises under' federal law if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law") (internal quotation marks omitted); *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir.1964) ("Even though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law."). Federal jurisdiction in these circumstances is predicated on "the presence of a federal issue in a state-created cause of action." *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229. Consequently, in cases where "state law creates the cause of action, [we] ask[ ] whether that cause of action poses a substantial federal question." *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.,* 815 F.2d 188, 192 (2d Cir.1987); *see also Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229 (noting that commentators

have framed the jurisdictional inquiry in these cases as "an evaluation of the *nature* of the federal interest at stake"); *Franchise Tax Bd.*, 463 U.S. at 8 n. 8, 103 S.Ct. 2841 ("The . . . 'arising under' language [in section 1331] tracks similar language in Art. III, § 2, of the Constitution, which has been construed as permitting Congress to extend federal jurisdiction to any case of which *federal law potentially forms an ingredient.*") (emphasis added) (internal quotation marks omitted).

■ The determination of whether a claim "arises under" federal law—or, as in the present case, whether removal jurisdiction existed—is "determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd.*, 463 U.S. at 27–28, 103 S.Ct. 2841. "[F]ederal jurisdiction must be found from 'what necessarily appears in the plaintiff's statement of his own claim . . ., unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *W. 14th St. Commercial Corp.*, 815 F.2d at 192 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218, (1914)). After "[e]xamining only those allegations which are properly raised in a well-pleaded complaint, the court must then determine whether the *substance of those allegations* raises a federal question." *Id.* (emphasis added); *cf. Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir.1998) ("The artful-pleading doctrine, [a] corollary to the well-pleaded complaint rule, prevents a plaintiff from avoiding removal by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.") (internal quotation marks omitted).

Each of the four causes of action in D'Alessio's state court complaint alleges claims under the common law of the state of New York. This point is undisputed by the parties. D'Alessio argues that a finding that federal jurisdiction is lacking is mandated by our prior decision in *Barbara*, in which we held improper the removal of an action challenging the propriety of internal disciplinary proceedings conducted by the NYSE. In response, the NYSE argues that removal was proper because the federal issues underlying D'Alessio's state law claims are sufficiently substantial to confer federal-question jurisdiction. These federal issues include the interpretation and application of the federal securities laws and the statutory requirement that the NYSE ensure that its members comply with the securities laws and exchange rules, areas of undisputed strong federal interest. Because the parties rely heavily on *Barbara* to support their respective positions, we briefly outline the relevant facts of that case.

In *Barbara*, the SEC initiated an investigation into alleged misconduct by Barbara, a floor clerk at the NYSE, and his employer, Mabon, Nugent Securities. 99 F.3d at 51. After the SEC filed disciplinary charges against Barbara, the NYSE suspended Barbara from working on the floor of the NYSE pending a formal hearing. *Id.* at 52. Barbara petitioned for, and was granted, a stay of the floor ban pending the outcome of his hearing. *Id.* In a subsequent decision, the board of directors of the NYSE reversed all charges brought against Barbara because he was denied adequate discovery. *Id.* Notwithstanding, the NYSE Enforcement Division continued to bar Barbara from working on the NYSE floor, causing him to leave the securities industry. *Id.*

Barbara commenced an action in state court alleging state law claims for, *inter*

*alia*, tortious interference with contractual relationships, tortious interference with prospective economic advantage, negligent supervision and breach of the covenant of fair dealing within an implied contract. *Id.* The NYSE removed the action to federal court, which Barbara apparently did not challenge. On motion of the NYSE, the district court dismissed Barbara's suit on the ground that he failed to exhaust his administrative remedies. *Id.* at 53. On appeal, we raised the question of subject matter jurisdiction *sua sponte*, and held that Barbara's claims were insufficiently substantial to "arise under" federal law within the meaning of section 1331. Our holding rested primarily on two factors: first, the absence of a private right of action under the applicable federal statute "counsel[ed] against a finding of federal question jurisdiction," *id.* at 54, and second, the claims raised by Barbara in his complaint involved the internal rules of the NYSE, which are contractual in nature, and "thus interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise." *Id.* at 55. We nevertheless sustained the district court's subject matter jurisdiction over the action based on Barbara's amended complaint, which alleged violations of federal law. *Id.* at 56.

■ We find the facts present in this case distinguishable from those in *Barbara*, and conclude that the instant suit implicates a federal interest sufficiently substantial to confer subject matter jurisdiction under section 1331.

In *Barbara*, the plaintiff's claims required the district court to determine whether disciplinary proceedings initiated by the NYSE were consistent with its own internal rules and its contractual obligations to its members. As such, the claims required an examination of the various *internal* rules of the NYSE in accordance with well settled principles of contract interpretation—a task uniquely within the province of state law.

In contrast, here, the federal interest is more substantial because D'Alessio's complaint does not simply challenge the propriety of disciplinary proceedings conducted by the NYSE. D'Alessio concedes this distinction, stating "the Complaint makes no allegations about disciplinary proceedings at all." Rather, an examination of the allegations contained in the complaint establishes that D'Alessio's suit is rooted in violations of federal law, which favors a finding that federal question jurisdiction exists. Specifically, the gravamen of D'Alessio's state law claims is that the NYSE and its officers conspired to violate the federal securities laws and various rules promulgated by the NYSE and failed to perform its statutory duty, *created under federal law*, to enforce its members' compliance with those laws.[5] *See, e. g., Sable v. Gen. Motors Corp.*, 90 F.3d 171, 174–75 (6th Cir.1996) ("arising under" jurisdiction existed where plaintiff's state law tort claim was premised on defendants' breach of a duty created under federal law). Thus, resolution of D'Alessio's claims requires a court to construe federal securities laws and evaluate the scope of the

---

**5.** D'Alessio apparently conceded this point below. In characterizing D'Alessio's arguments, the district court stated:

[D'Alessio] seek[s] to distinguish *Barbara* from the instant lawsuit in several respects. First, [D'Alessio] note[s] that while *Barbara* involved misconduct in connection with disciplinary proceedings, the misconduct

alleged in the instant lawsuit also includes improper interpretations of federal securities laws and allegedly duplicitous conduct in connection with providing information about plaintiffs to the [SEC] and the U.S. Attorney's Office.

*D'Alessio*, 125 F.Supp.2d at 658.

NYSE's duties, as defined under the Exchange Act and the regulations and rules thereto, in enforcing and monitoring a member's compliance with those laws.[6] *See, e. g., Sparta Surgical Corp.*, 159 F.3d at 1211 (holding, in an action where plaintiff alleged state common-law claims for, *inter alia,* breach of express and implied contract, breach of the covenant of good faith and fair dealing, gross negligence, intentional misrepresentation, negligent misrepresentation, and interference with economic relations that, "[b]ecause [the] complaint sought relief based upon violation of exchange rules, subject matter jurisdiction was specifically vested in the federal district court under the Exchange Act"); *Marcus*, 138 F.3d at 55–56 (federal jurisdiction proper where plaintiffs' state law breach of warranty claim sought to enforce the terms of tariff agreements between AT & T and its customers created by federal law); *cf. Merrell Dow*, 478 U.S. at 806, 106 S.Ct. 3229 ("arising under" jurisdiction did not exist where plaintiffs alleged five common law theories of recovery and a single violation of the Federal Food, Drug, and Cosmetic Act, which violation, if proven, "constitute[d] a rebuttable presumption of negligence" and "directly and proximately caused the injuries suffered by [the plaintiffs' children]") (internal quotation marks omitted); *W. 14th St. Commercial Corp.*, 815 F.2d at 196 (noting that, in *Merrell Dow,* "the federal statute was merely incorporated by reference as a standard of conduct in a state negligence action"). To that end, the complaint is replete with allegations that the NYSE "conspired to violate [the federal securities laws]" and "concocted a phoney interpretation" of these laws and applicable NYSE rules that it knowingly communicated to D'Alessio and other floor brokers to their detriment. Thus, we agree with the district court's conclusion that "the central premise" of D'Alessio's complaint "is that the [NYSE and its various senior officials] violated and purposely encouraged [D'Alessio] and others to violate § 11(a) of the Exchange Act by promulgating erroneous and misleading interpretations of that statutory provision." *Frayler*, 118 F.Supp.2d at 450.

■ This determination compels our resolution of the question of jurisdiction: because the NYSE's alleged violations of the federal securities laws and its improper interpretation of those laws underlie D'Alessio's state law claims, the federal issue is substantial. "[U]pon [the federal statute's] construction the vindication of

---

**6.** A cursory examination of the complaint demonstrates that D'Alessio's claims are predicated on alleged breaches of certain duties imposed on the NYSE under the Exchange Act in its capacity as a SRO. Specifically, the allegedly untrue statements made by the NYSE to the government in connection with its investigation into D'Alessio's trading activities form the basis of D'Alessio's injurious falsehood claim. *See, e. g., Squire Records v. Vanguard Recording Soc'y*, 25 A.D.2d 190, 192, 268 N.Y.S.2d 251, 254 (1st Dep't 1966), *aff'd,* 19 N.Y.2d 797, 279 N.Y.S.2d 737, 226 N.E.2d 542 (1967). D'Alessio's fraudulent deceit and concealment claim arises out of the NYSE's alleged misinterpretation and purposeful concealment of the federal securities laws and various regulations and rules applicable to D'Alessio's trading activities, which were the basis of the charges brought by the government. The negligent misrepresentation claim is based on allegedly false statements made by the NYSE to D'Alessio in connection with their SRO-member relationship. *See, e. g., Pappas v. Harrow Stores,* 140 A.D.2d 501, 504, 528 N.Y.S.2d 404, 407 (2d Dep't 1988) (holding that "some special relationship" between the parties is required to recover under the theory of negligent misrepresentation). Finally, D'Alessio's breach of contract claim against the NYSE only is based on the membership agreement executed by D'Alessio and the NYSE that is required under the Exchange Act for D'Alessio to execute trades on the NYSE floor.

rights and definition of relationships *created by federal law* depends." *W. 14th St. Commercial Corp.*, 815 F.2d at 193, 196 ("arising under" jurisdiction established where plaintiff's state law claims "encompass a substantial federal question under the Condominium and Cooperative Abuse Relief Act"); *see also Caterpillar Inc.*, 482 U.S. at 395, 107 S.Ct. 2425 (federal question jurisdiction did not lie under section 301 of the Labor Management Relations Act where the resolution of the plaintiffs' breach of an individual employment contract claims "[did] not substantially depend[ ] upon interpretation of the collective-bargaining agreement"); *Sparta Surgical Corp.*, 159 F.3d at 1212 ("[A]lthough [plaintiff's] theories are posited as state law claims, they are founded on the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law."). Accordingly, we conclude that the "federal ingredient" in the present action is far more significant than the federal interest present in *Barbara. W. 14th St. Commercial Corp.*, 815 F.2d at 196.

Our conclusion in favor of federal jurisdiction is bolstered by allegations in the complaint of malfeasance on the part of the NYSE in the performance of its general oversight function. Specifically, D'Alessio alleges that the NYSE failed to satisfy its "duty to its members to abide by and enforce its rules, and to accurately advise its members with respect to the securities laws and regulations and its own rules." This duty is imposed on the NYSE by sections 19(g) and 19(h) of the Exchange Act, *see* 15 U.S.C. §§ 78s(g), (h); *In re N.Y. Stock Exch.*, 1999 WL 430863, at *3 ("The NYSE has an affirmative obligation to be vigilant in surveilling for, evaluating, and effectively addressing activity that could involve violations of [the Exchange Act, the rules and regulations thereunder,

and the rules of the NYSE]."), and was the focus of SEC administrative proceedings, which examined whether the NYSE undertook adequate procedures "for the purpose of detecting securities law violations and enforcing compliance by its members." *In re N.Y. Stock Exch.*, 1999 WL 430863, at *2.

While D'Alessio's claims are cast as state law claims, they are premised, in large part, on the NYSE's failure to enforce and monitor compliance by its members with the Exchange Act and the rules and regulations thereunder, as well as the rules promulgated by the NYSE pursuant to the Exchange Act. *See id.* at *1 ("Exchanges violate Section 19(g) when they fail to be vigilant in surveilling for, evaluating, and effectively addressing issues that could involve violations of the securities laws.") (internal quotation marks omitted). The source of the duty imposed on the NYSE (as well as other SROs) is found in *federal* law; namely, in the Exchange Act. Thus, it is the propriety of the NYSE's actions, as prescribed under federal law, that is at the heart of D'Alessio's allegations. Moreover, resolution of D'Alessio's claims necessarily requires an inquiry into whether the NYSE satisfactorily performed its duty in identifying potential violations of the federal securities laws and assisting in any criminal or civil investigation arising from a member's noncompliance with those laws, both areas of strong federal interest. *See, e. g., Barbara*, 99 F.3d at 59; *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir.1996); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500, 1504 (11th Cir.1986) ("The comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest."); *Frayler*, 118 F.Supp.2d at 451 ("[T]he question of whether the [NYSE] properly

interpreted § 11(a) of the Exchange Act is wholly a matter of federal law and, indeed, a matter of intense federal concern given the importance of federal regulation of the stock market."). In recognition of that interest, section 27 of the Exchange Act vests in federal courts exclusive jurisdiction over claims alleging violations of the securities laws and actions "brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa. In sum, because D'Alessio's claims necessarily require a court to construe both the federal law governing securities trading on a national exchange *and* the NYSE's role, as defined under federal law, in enforcing and monitoring a member's compliance with those laws, we conclude that the federal interest underlying D'Alessio's claims is sufficiently substantial to "arise under" federal law within the meaning of section 1331.

### C. *Whether the NYSE and its Officials Enjoy Absolute Immunity From Suit*

Having determined that removal was proper, we proceed to the second inquiry: whether the NYSE and its officers possess absolute immunity with respect to D'Alessio's claims. Because the facts relevant to the question of immunity are undisputed and clearly set forth in the record, we decide that question as a matter of law, based on the allegations contained in the complaint. *See Austin Mun. Sec. v. Nat'l Ass'n of Sec. Dealers,* 757 F.2d 676, 685 (5th Cir.1985). As the party seeking immunity from personal liability for its actions, the NYSE bears the burden of establishing that it is entitled to immunity from suit. *See Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The NYSE argues that it is absolutely immune from suit because the alle-

gations in the complaint are predicated on the NYSE's improper performance of the regulatory functions delegated by the SEC to the NYSE pursuant to the Exchange Act. In response, D'Alessio argues that the district court's dismissal of the complaint on absolute immunity grounds was based on an "erroneous expansion" of our decision in *Barbara,* which accorded the NYSE immunity from suit in a case involving alleged misconduct in connection with internal disciplinary proceedings. Specifically, D'Alessio argues that, unlike *Barbara,* "the misconduct alleged in the instant lawsuit also includes improper interpretations of federal securities laws and allegedly duplicitous conduct in connection with providing information about plaintiffs to the [SEC] and the U.S. Attorney's Office." *D'Alessio,* 125 F.Supp.2d at 658. Relying on our prior decision in *Barbara,* the district court rejected D'Alessio's position and held that "the interpretive and referral functions of the [NYSE] are just as quasi-governmental as its disciplinary functions, and hence the same immunities attach." *Id.* We agree with the district court's reasoning on this point, and affirm its determination that the NYSE is immune from liability for claims arising out of the discharge of its duties under the Exchange Act.

As in our resolution of the jurisdiction question, we begin with the specific facts and holding in *Barbara.* In *Barbara,* we upheld the district court's decision according absolute immunity to the NYSE for "claims arising out of the performance of its federally-mandated conduct of disciplinary proceedings." 99 F.3d at 58. Although our decision was based on alleged misconduct in connection with disciplinary proceedings, we held that the entitlement of a government official to immunity from suit should be decided on a case-by-case basis, "depend[ing] upon the nature of the

governmental function being performed." *Id.* ("[I]mmunity doctrines protect private actors when they perform important governmental functions."). Consistent with that approach, we recognized that "courts have not hesitated to extend the doctrine of absolute immunity to private entities engaged in *quasi-public adjudicatory and prosecutorial duties.*" *Id.* (emphasis added); *see also Sparta Surgical Corp.*, 159 F.3d at 1214 (affirming dismissal of suit against the NASD for improperly de-listing and suspending trading in a stock on the NASDAQ stock market on immunity grounds); *Austin Mun. Sec.*, 757 F.2d at 689 (holding that NASD disciplinary officers are "entitled to absolute immunity from further prosecution for civil liability for their actions taken within the outer scope of their official duties"); *cf. Harms v. Riordan–Bellizi*, 223 A.D.2d 624, 625, 636 N.Y.S.2d 839, 840 (2d Dep't 1996) ("[T]he decision of the hearing officer, rendered after a hearing, was quasi-judicial in nature, and therefore is clothed with absolute immunity from claims sounding in defamation or injurious falsehood."). We further held that "absolute immunity is particularly appropriate in the unique context of the self-regulation of the national securities exchanges," where the NYSE "performs a *variety of regulatory functions* that would, in other circumstances, be performed by [the SEC]." *Barbara*, 99 F.3d at 59 (emphasis added); *see also Sparta Surgical Corp.*, 159 F.3d at 1214 ("[S]elf-regulatory organizations do not enjoy complete immunity from suits; it is only when they are acting under the aegis of the Exchange Act's delegated authority that they so qualify."). Thus, although the immunity inquiry in *Barbara* was confined to the NYSE's conduct in connection with disciplinary proceedings, *Barbara* stood for the broader proposition that a SRO, such as the NYSE, may be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions. *See Barbara*, 99 F.3d at 59; *Austin Mun. Sec.*, 757 F.2d at 681 (describing the self-regulatory power of the NASD as "broad"). Accordingly, we reject D'Alessio's attempts to limit our application of the doctrine of absolute immunity to cases involving misconduct in connection with disciplinary proceedings and excluding activities of the NYSE, as a SRO, in performing quasi-governmental functions pursuant to the broad authority delegated to it by the Exchange Act.

■ The NYSE, as a SRO, stands in the shoes of the SEC in interpreting the securities laws for its members and in monitoring compliance with those laws. It follows that the NYSE should be entitled to the same immunity enjoyed by the SEC when it is performing functions delegated to it under the SEC's broad oversight authority. *See Sparta Surgical Corp.*, 159 F.3d at 1213 ("Extending immunity when a self-regulatory organization is exercising quasi-governmental powers is consistent with the structure of the securities market as constructed by Congress."); *Austin Mun. Sec.*, 757 F.2d at 690–91 ("[The] NASD disciplinary officers serve as surrogates for the SEC, and should receive the same immunity their principles [sic] possess."); *D'Alessio*, 125 F.Supp.2d at 658 (holding that according the NYSE absolute immunity when it performs regulatory functions that would otherwise be performed by the SEC "is a matter not simply of logic but of intense practicality, since, in the absence of such immunity, the [NYSE's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits").

■ In determining whether the NYSE is entitled to absolute immunity from suit in the present case, we look not

at the manner in which D'Alessio casts his claims against the NYSE (*i.e.*, tort or contract), but rather to the alleged misconduct of the NYSE as detailed in the complaint. D'Alessio's claims are predicated on the NYSE's improper performance of its interpretive, enforcement and referral functions. Specifically, D'Alessio alleges that the NYSE incorrectly interpreted and applied section 11(a) of the Exchange Act and regulations and rules thereto (interpretive function); that the NYSE failed to monitor D'Alessio's compliance with the Exchange Act and various rules of the NYSE, and advise him that the commissions he earned in connection with "flip" trades violated those laws (enforcement function); and that the NYSE provided false information when it cooperated with and assisted the United States Attorney's Office and the SEC in their investigations into alleged violations of section 11(a) by D'Alessio and other floor brokers (referral function). The district court concluded that the NYSE's actions fell "well within the perimeter of the [NYSE's] quasi-governmental duties" because they "relate to the [NYSE's] development and promulgation of interpretations of statutory and regulatory requirements, the dissemination and implementation of these interpretations, and the provision of information to government agencies." *D'Alessio*, 125 F.Supp.2d at 658. After reviewing the complaint, we agree with the district court's determination that the NYSE's alleged misconduct falls within the scope of quasi-governmental powers delegated to the NYSE pursuant to the Exchange Act and, therefore, conclude that absolute immunity precludes D'Alessio from recovering money damages in connection with his claims.

The NYSE's alleged improper interpretation of the type of conduct prohibited under section 11(a) falls within the NYSE's "quasi-public adjudicatory" duties.

Similarly, the NYSE acted in its adjudicatory capacity when it determined that D'Alessio was guilty of violating section 11(a) and various rules of the NYSE and suspended him from further trading on the NYSE floor. Because these actions "share the characteristics of the judicial process," *Barbara*, 99 F.3d at 59 (quotation marks omitted), the NYSE is entitled to immunity from suit for claims based on these actions. In charging D'Alessio with misconduct and referring his case to the United States Attorney's Office and the SEC, the NYSE exercised its authority pursuant to its "quasi-prosecutorial" function. Finally, any malfeasance on the part of the NYSE in failing to monitor D'Alessio's and other floor brokers' compliance with the prohibition under section 11(a) plainly falls within the scope of the quasi-governmental duties delegated to the NYSE under the Exchange Act. Notwithstanding the distinct nature of these duties, the misconduct that the NYSE allegedly engaged in share a common theme: they all relate to "proper functioning of the regulatory system," *Austin Mun. Sec.*, 757 F.2d at 687. Accordingly, consistent with *Barbara*, we hold that the NYSE, when acting in its capacity as a SRO, is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder. *See Barbara*, 99 F.3d at 59; *see also P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers*, 169 F.3d 606, 608 (9th Cir.1999); *Sparta Surgical Corp.*, 159 F.3d at 1214. Therefore, the district court correctly determined that the NYSE and its various officers were entitled to absolute immunity for the claims brought by D'Alessio.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of judgment on the

pleadings in favor of the NYSE and its various officers. The parties shall bear their own costs on this appeal.