### State of NEW YORK, Plaintiff,

### v.

### Todd J. JUSTIN, et al., Defendants.

### No. 02–CV–489S.

United States District Court,
W.D. New York.

Nov. 12, 2002.

Dennis Rosen, NYS Attorney General's Office, Buffalo, NY, for State of New York.

Luigi Spadafora, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Financial Network Investment Corp.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

The State of New York commenced this action on June 10, 2002, by filing a Summons and Complaint in the New York State Supreme Court, County of Erie. The Complaint alleges that the defendants (fifteen individuals and ten business associations) violated New York law through their involvement in an investment scheme that defrauded over six hundred Western New York residents. On July 11, 2002, one of the defendants, Financial Network Investment Corporation ("FNIC"), removed the action to this Court. FNIC subsequently filed a Motion to Dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] On July 30, 2002, Plaintiff filed a Motion for Remand to state court.[2] Oral argument on Plaintiff's motion was held on September 6, 2002. Decision was reserved. For the following reasons, this Court will grant Plaintiff's motion, remand the case to state court, and deny Defendant's motion as moot.

### BACKGROUND

The facts of this case, undisputed for purposes of the present motions, are as follows:

### A. The ETS Program

From August of 1998 until September of 2000, a group of securities salespeople defrauded Western New York residents, primarily senior citizens, in the amount of $18.5 million. (Compl. at ¶¶ 2, 3). The investment scheme involved the purchase of coin-operated payphones from ETS Payphones, Inc. ("ETS"), a Georgia corporation. (Compl. at ¶ 3). The investors paid $7000 for each payphone, which were then leased back to ETS. (Compl. at ¶¶ 3, 116, 119–23). In return, ETS agreed to maintain and operate the phones, make monthly payments to the investor, buy back the phones at any time after the first six months, and either renew the agreement or repurchase the phones for the original price after five years. (Compl. at ¶¶ 3, 119–23). ETS and the securities salespeople called this the Payphone Equipment Lease Program (the "ETS Program"). (Compl. at ¶ 3).

The securities salespeople represented that the ETS program was highly profitable and practically risk-free. (Compl. at ¶¶ 5, 124). In fact, it lost money almost immediately, the monthly payments were made from the proceeds of sales to other investors, and ETS soon filed for bankruptcy. (Compl. at ¶¶ 5–7, 126).

### B. Defendant FNIC

Defendant FNIC is a California-based securities broker authorized to do business in New York. (Compl. at ¶ 36). During the times relevant to this action, FNIC operated a branch office in Depew, New York, called Justin Financial Services (Defendant "JFS"). (Compl. at ¶¶ 17, 69). Defendants Eric Justin, Patrick Justin, Jay Gianni, David Sada, Yun Coughlin, and Alan Justin, Jr. (the "FNIC Securities Salespeople") worked out of the Depew office and were registered as securities salespeople with FNIC. (Compl. at ¶¶ 68, 69). Defendant Alan Justin, Jr. served as the branch manager and supervisor of the oth-

---

1. Defendant FNIC filed a memorandum of law in support of this motion.

2. In support of this motion, Plaintiff filed a memorandum of law and reply memorandum of law. In opposition, Defendant FNIC filed a memorandum of law and a certification by Luigi Spadafora, Esq..

er FNIC Securities Salespeople. (Compl. at ¶ 69).

In November of 1998, Alan Justin, Jr. asked FNIC's home office for permission to sell the ETS Program out of the Depew office as an "outside business activity" (a non-security, non-regulated product). (Compl. at ¶ 77). When making this request, Justin never disclosed that the FNIC Securities Salespeople had already made several sales of the ETS Program. (Compl. at ¶ 78). FNIC denied Justin's request on December 29, 1998, and directed him to prohibit the FNIC Securities Salespeople from offering the ETS Program. (Compl. at ¶ 79). Justin and the other FNIC Securities Salespeople continued to sell the ETS Program anyway, actively concealing this fact from FNIC. (Compl. at ¶ ¶ 80, 82).

On May 4, 1999, FNIC's home office directed Justin to have the FNIC Securities Salespeople sign a statement affirming that they were not involved in the offering of "any unapproved outside business activity, including payphone programs." (Compl. at ¶ 83). Each of the FNIC Securities Salespeople signed and submitted the statements. (Compl. at ¶ 85). On May 14, 1999, Justin terminated the relationship between JFS and FNIC. (Compl. at ¶ 92).

### C. The Complaint

The Complaint asserts thirteen causes of action against twenty-five defendants. The first eleven causes of action allege conduct, by all or various combinations of defendants, that violates the securities registration and anti-fraud provisions of New York's "blue-sky" law, commonly referred to as the "Martin Act." (Compl. at ¶ ¶ 158–212). The twelfth cause of action accuses all of the defendants with violations of New York State Executive Law § 63(12), which prohibits repeated or persistent fraudulent or illegal business activities.

(Compl. at ¶ ¶ 213–15). The thirteenth cause of action charges all defendants with consumer fraud against elderly people, a violation of New York's General Business Law § 349(c). (Compl. at ¶ ¶ 216–18).

The seventh, twelfth, and thirteenth causes of action are the only claims asserted against Defendant FNIC.[3] There is no allegation that FNIC actually sold the ETS Program or, in fact, knew anything about the investment scheme occurring in New York. Rather, Plaintiff alleges that although FNIC exercised the "minimum required degree of supervision" over Justin and the other FNIC Securities Salespeople, industry standards called for a "heightened" level of supervision under the circumstances. (Compl. ¶ ¶ at 143–55). In its seventh cause of action, Plaintiff contends that this failure to adequately or reasonably supervise constituted a fraudulent practice in violation of G.B.L. §§ 352 and 352–c (1). (Compl. ¶ ¶ at 185–91). The twelfth cause of action alleges that the allegedly inadequate supervision was a "repeated and persistent fraudulent or illegal" act in violation of New York State Executive Law § 63(12). (Compl. ¶ ¶ at 213–15). Finally, the thirteenth cause of action charges that FNIC's failure to undertake "heightened supervision" constituted "fraudulent or illegal consumer fraud" against elderly people in violation of G.B.L. § 349(c). (Compl. at ¶ ¶ 216–18).

### DISCUSSION

### I. PLAINTIFF'S MOTION FOR REMAND

#### A. Legal Standard

#### 1. *Removal Jurisdiction*

Under certain circumstances, a civil action originally filed in state court may be removed to federal district court. 28

---

**3.** The motions currently before this Court re-    late only to Defendant FNIC.

U.S.C. § 1441. However, the federal court may only entertain the suit if it has jurisdiction over the subject matter of the action. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party asserting federal jurisdiction "bears the burden of proving that the case is properly in federal court . . . ." *United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994). If the district court lacks subject matter jurisdiction, remand to state court is mandatory. *See id.; Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 (2d Cir.1996).

Where there is no diversity of citizenship between the parties, "the propriety of removal turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983); *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir.2002). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### 2. *Well–Pleaded Complaint Rule*

To determine whether federal question jurisdiction exists in a particular case, courts refer to the "well-pleaded complaint" rule. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (noting that the well-pleaded complaint rule is "the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts"). This rule provides that federal district courts have jurisdiction "to hear, originally, or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or

that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27–28, 103 S.Ct. 2841.

Thus, when removal jurisdiction is at issue, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises' under federal law." *Id.* at 10, 103 S.Ct. 2841 (emphasis in original). "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id.* at 10–11, 103 S.Ct. 2841 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 52 (2d Cir.1998) (noting that "[u]nder the well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available").

When applying the well-pleaded complaint rule, courts are to "proceed prudently and make pragmatic distinctions between those allegations, if any, that raise substantial questions and those that do not." *Tang*, 290 F.3d at 137. This involves examining "the nature of the federal question raised in [each] claim to see if it is sufficiently substantial to warrant federal jurisdiction." *Id.* (quoting *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir.1995)).

### 3. *Complete Preemption Doctrine*

The Supreme Court has carved out a narrow "exception" to the well-pleaded complaint rule. In certain instances, the Court found that Congress "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life*, 481 U.S. at 63–64, 107 S.Ct. 1542; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 2430, 96

L.Ed.2d 318 (1987). In those cases where "federal common or statutory law so utterly dominates a preempted field that all claims brought within that field necessarily arise under federal law, a complaint purporting to raise state law claims in that field actually raises federal claims." *Marcus*, 138 F.3d at 53. Once a court finds that this "exception" applies, federal question jurisdiction exists, and removal to federal district court is proper.[4]

### 4. *Artful Pleading Doctrine*

Another "exception" to the well-pleaded complaint rule is the "artful pleading" doctrine. Under this theory, a plaintiff "may not defeat removal by clothing a federal claim in state garb, or as it is said, by the use of 'artful pleading.'" *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.1986); *see also Marcus*, 138 F.3d at 55–56. A state law claim may actually be a well-disguised federal claim where "the elements of the claim [a]re virtually identical to those of a claim expressly grounded on federal law." *See Sarkisian*, 794 F.2d at 760; see also *In re NASDAQ Market Makers Antitrust Litigation*, 929 F.Supp. 174, 178 (S.D.N.Y.1996) (interpreting *Sarkisian* ).[5]

### B. Analysis

In the present case, the State of New York argues that this Court lacks subject matter jurisdiction and must, therefore, remand the action to state court. *See United Food*, 30 F.3d at 301. Thus, Defendant FNIC bears the burden of demonstrating that this case is properly in federal court. *Id.* As there is no diversity of citizenship between the parties, to meet this burden, FNIC must show that this Court has federal question jurisdiction over the subject matter of this action. *See Franchise Tax Bd.*, 463 U.S. at 27–28, 103 S.Ct. 2841.

FNIC contends that federal question jurisdiction exists for three reasons: (1) Plaintiff's claims "arise" out of federal securities law, (2) Congress has so completely preempted this area of securities regulation that Plaintiff's claims are necessarily federal, and (3) Plaintiff's attempt to characterize its claims as based in state law is an exercise in "artful pleading." Each of this arguments will be examined in turn.

### 1. *Jurisdiction & Federal Securities Law*

FNIC's first argument calls for the application of the well-pleaded complaint rule. It is undisputed that the three causes of action asserted against FNIC were created by the laws of the State of New York. To wit, Plaintiff charges that FNIC's failure to adequately supervise its securities salespeople constituted fraud in violation of various provisions of New York's "blue-sky" and anti-fraud laws.

However, even when a claim is created by state law "a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning and application of such a law." *D'Alessio v. NYSE*, 258 F.3d 93, 100 (2d Cir. 2001) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir.1964)). In these

---

**4.** Courts have noted that the complete preemption doctrine is not really an exception to the well-pleaded complaint rule, but rather it is a corollary. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425; *Marcus*, 138 F.3d at 53. This is because whenever the complete preemption doctrine applies, the well-pleaded complaint rule is satisfied (the complaint necessarily raises substantial questions of federal law).

**5.** As with the complete preemption doctrine, artful pleading is more properly styled a "corollary" rather than an exception. In addition, the two corollaries are not totally distinct. In fact, the Second Circuit noted in *Sarkisian* that the "classic application of the artful pleading doctrine occurs in the context of federal preemption of state law." 794 F.2d at 758.

cases, courts look to see whether there is a substantial federal issue (or question) posed by the state law cause of action. *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986); *D'Alessio,* 258 F.3d at 99. In other words, when dealing with a state cause of action, federal question jurisdiction exists only if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841; *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. 3229.

In the present case, FNIC relies heavily upon the Second Circuit's decision in *D'Alessio,* 258 F.3d 93. In that case, the Court found federal question jurisdiction present where the suit alleged a conspiracy to violate federal statutory and regulatory rules governing unlawful securities trading. *Id.* at 99–104. The Court held that the gravamen of the plaintiff's state law claims was that the New York State Exchange ("NYSE") and its officers conspired to violate federal securities law and that the NYSE "failed to perform its statutory duty, *created under federal law,* to enforce its members' compliance with those laws." *Id.* at 101 (emphasis in original). Further, federal jurisdiction was established by the fact that the plaintiff's claims would require a court "to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under the Exchange Act and the regulations and rules thereto . . . ." *Id.* at 101–02.

FNIC argues that its duty to supervise its registered securities salespeople is created and defined exclusively by federal law, to wit, 15 U.S.C. § 78t(a) (§ 20(a) of the "1934 Act"), and certain rules and regulations promulgated by the Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers ("NASD"). Plaintiff's claims allege that FNIC failed to adhere to "industry standards," which required heightened supervision under the circumstances. FNIC asserts that federal jurisdiction exists because, as in *D'Alessio,* (1) any duty that it had to supervise its securities salespeople was created by federal law and (2) any determination of what "industry standards" required under the circumstances will turn on the resolution of substantial, disputed questions of federal law.

■ This Court finds these arguments unavailing and *D'Alessio* distinguishable for the following reasons. First, the duty to supervise securities salespeople is not solely a creature of federal law. The supervisory duty provided for in § 20(a) of the 1934 Act was "enacted to expand rather than to restrict the scope of liability under the securities laws." *Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 713 (2d Cir.1980). The liability provided for under federal securities law does not preclude resort to other theories of liability, including traditional agency principles. *Id.; SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 813 (2d Cir.1975). The 1934 Act contains a specific provision stating that "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity . . . ." 15 U.S.C. § 78bb(a). Thus, in fine federalist fashion, the 1934 Act was designed to supplement rights and duties created by state "blue sky" laws, not supercede them. Accordingly, this Court finds that FNIC's duty to supervise its registered securities salespeople is neither created by, nor limited to, the provisions of the 1934 Act. The State of New York remains free to pursue other "rights and remedies" against FNIC existing under state law.[6]

---

**6.** In its papers, FNIC argues that Plaintiff is

making "an unprecedented leap" by asserting

Second, although Plaintiff acknowledged in its papers and at oral argument that proof of its claim may involve reference to federal law and SEC/NASD rules in establishing the relevant standard of conduct, this is not sufficient to confer federal jurisdiction. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow*, 478 U.S. at 813, 106 S.Ct. 3229. Courts have held that the "borrowing" of a federal law "as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction." *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 193 (2d Cir.1987) (discussing Supreme Court's holding in *Merrell Dow*); *see also Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570–71 (2d Cir.1995).

In the present case, Plaintiff does not even seek to borrow federal law, merely to use it as a "guidepost" in assessing the appropriate level of supervision. *See Donovan v. Rothman*, 106 F.Supp.2d 513, 517–18 (S.D.N.Y.2000) ("To the extent New York looks to federal law as a guidepost in assessing a breach of fiduciary duty ... that assessment ultimately remains a creature of New York law."). The issues in this case will be whether (1) New York's securities and anti-fraud laws impose a duty to supervise securities salespersons and (2) whether FNIC violated that duty by failing to adequately supervise its employees under the circumstances. These issues will be resolved through the construction and application of New York law. While reference may be made to federal law and rules with respect to the standard of conduct (the so-called "industry stan-

dards"), this is not sufficient to establish that "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841.

Finally, this Court finds that *D'Alessio* is distinguishable from the instant case. In *D'Alessio*, the plaintiff's state law claims alleged a conspiracy to violate federal securities laws and a failure to perform a duty created under federal law. 258 F.3d at 101. In the present case, Plaintiff's claims allege violations of *New York* securities and anti-fraud laws and a failure to perform a duty created by New York statutory and common law. Further, resolution of the claims in *D'Alessio* "require[d] a court to construe federal securities laws and evaluate the scope of the [defendant's] duties, as defined under the [1934 Act] and the regulations and rules thereto, in enforcing and monitoring a member's compliance with those laws." *Id.* at 101–02. By contrast, resolution of the State of New York's claims will require construction of New York law and evaluation of the scope of FNIC's duties (if any) under those laws. If a New York court concludes that state law imposed a duty of "heightened supervision," reference might be made to federal laws and rules to determine whether FNIC's supervision met that standard, but federal law cannot be said to underlie (or serve as the basis of) the state law claims. *Cf. id.* at 102 (holding that "because the NYSE's alleged violations of the federal securities laws underlie D'Alessio's state law claims, the federal issue is substantial").

that the alleged failure to supervise constituted "fraud" under New York law. This may be true, FNIC may in fact have no New York duty to supervise, but that is a question to be resolved by a New York court through construction of the plain language and history of the applicable provisions of New York law. The only question resolved here is that the FNIC's duty to supervise is not *necessarily* limited to the provisions of federal law.

### 2. Complete Preemption & Securities Laws

FNIC's second argument suggests that federal common or statutory law "so utterly dominates" the field of securities law, "that all claims brought within that field necessarily arise under federal law, a complaint purporting to raise state law claims in that field actually raises federal claims." *Marcus*, 138 F.3d at 53. Congress has delegated significant securities regulation authority to the SEC and NASD. 15 U.S.C. § 78o–3. Pursuant to this authority, these organizations have promulgated extensive rules regarding broker-dealer supervision of registered representatives. Thus, FNIC contends that any complaint raising state law claims with respect to such supervision actually raises federal claims under the SEC and NASD rules and regulations.

■ This Court finds that federal securities law does not dominate the field so as to invoke the complete preemption "exception" to the well-pleaded complaint rule. First, the Supreme Court has said that "*extraordinary* preemptive power" is required to convert "an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65, 107 S.Ct. 1542 (emphasis added). The complete preemption exception has been reserved for provisions of federal law with "preemptive force ... so powerful as to displace entirely any state cause of action ...." *Caterpillar*, 482 U.S. at 394, 107 S.Ct. 2425 (quoting *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. 2841). In particular, this type of preemption is only present when the policy choices underlying the federal provision "would be completely undermined" if litigants "were free to obtain remedies under state law ...." *Metro. Life*, 481 U.S. at 64, 107 S.Ct. 1542 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987)).

As discussed above, the 1934 Act contains a specific provision stating that it is intended to complement, rather than override, state securities laws. 15 U.S.C. § 78bb(a). This type of "saving clause" is simply inconsistent with the proposition that Congress intended that 1934 Act (or regulations promulgated pursuant to it) have the type of extraordinary preemptive power necessary to convert Plaintiff's state law claims into federal ones. In addition, FNIC's contention that federal securities law overrides all other theories of recovery in this case contradicts the Second Circuit's conclusion that the supervisory duty provided for under § 20(a) of the 1934 Act does not preclude resort to other theories of liability, including traditional agency principles. *See Marbury Mgmt.*, 629 F.2d at 713; *Mgmt. Dynamics*, 515 F.2d at 813.[7]

---

7. It may be true that, in evaluating Plaintiff's claims, a New York court could find that the federal regulation in this particular area is pervasive enough to provide FNIC with a defense of preemption. However "the presence of a federal question ... in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint [and] that a federal question must appear on the face of the complaint ...." *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425; *see also Metro. Life*, 481 U.S. at 67, 107 S.Ct. 1542 (noting that "even an 'obvious preemption defense' does not, in most cases, create removal jurisdiction"). The narrow question decided here is whether § 20(a) has extraordinary preemptive power sufficient to transform all state law claims that a complaint alleges into federal ones. Given the 1934 Act's savings clause and the Second Circuit's holdings in *Marbury* and *Mgmt. Dynamics,* this Court finds that it does not.

### 3. *Artful Pleading & New York Claims*

The last issue is whether Plaintiff is attempting to "defeat removal by clothing a federal claim in state garb, or as it is said, by the use of 'artful pleading.'" *Sarkisian,* 794 at 758; *see also Marcus,* 138 F.3d at 55–56. FNIC contends that while Plaintiff styles its claims as raising issues under New York law with respect to the secondary liability of broker-dealers, the real heart of the claims are FNIC's failure to supervise in accordance with "industry standards." In FNIC's view, the resolution of such claims will turn upon a determination as to whether FNIC complied with its federally created and defined duty to supervise its registered securities salespeople. As before, this Court notes that the duty to supervise, and the potential liability for failure to adequately supervise, are neither created by, nor limited, to the provisions of the 1934 Act. Rather, individual states remain free to seek the "rights and remedies" available under their respective laws for dealing with questions of fraud and securities offerings. Accordingly, this Court finds that Plaintiff is not asserting disguised federal claims, but rather is taking a novel approach to enforcing its own anti-fraud and consumer protection laws.

### *CONCLUSION*

For the foregoing reasons, this Court finds that there is no substantial federal question posed by the state law causes of action alleged in the Complaint. *See Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229. In such circumstances, remand to state court is mandatory. *United Food,* 30 F.3d at 301. Accordingly, this Court will grant Plaintiff's Motion for Remand.[8] In addition, Defendant FNIC's Motion to Dismiss will be denied as moot.

### *ORDERS*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Remand to the Supreme Court of New York (Docket No. 6) is GRANTED.

FURTHER, that Defendant FNIC's Motion to Dismiss (Docket No. 3) is DENIED as moot.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to transfer this case to the appropriate New York state court.

SO ORDERED.

---

8. Plaintiff also sought to have this action remanded on abstention grounds. As Plaintiff's motion will be granted based on the application of the well pleaded complaint rule, this issue need not be decided.