**Jing SUNG, Derivatively, on behalf of LAZARD LTD., Plaintiff,**

v.

**Bruce WASSERSTEIN, Michael J. Castellano, Scott D. Hoffman, Charles G. Ward III, Steven J. Golub, Robert Charles Clark, Ellis Jones, Vernon E. Jordan, Jr., Anthony Orsatelli and Goldman Sachs & Co., Defendants,**

and

**Lazard Ltd., a Bermuda company, Nominal Defendant.**

**No. 05 CIV. 5785(VM).**

United States District Court, S.D. New York.

Feb. 17, 2006.

Gregory Bradley Linkh, Murray, Frank & Sailer, LLP, New York City, Christopher J. Gray, Christopher J. Gary, PC, New York City, Brian J. Robbins, Mare M. Umeda, Robbins, Umeda & Fink, LLP, San Diego, CA, for Plaintiffs.

Marc Wolinsky, Adir Gurion Waldman, Sarah Fern Meil, Wachtell, Lipton, Rosen & Katz, New York, NY, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Jing Sung ("Sung") commenced a shareholder derivative action (the "Sung Action") on behalf of Lazard Ltd. ("Lazard") in the Supreme Court of the State of New York, New York County, based on events surrounding Lazard's initial public offering ("IPO"). Defendants in this action Bruce Wasserstein, Michael J. Castellano, Scott D. Hoffman, Charles G. Ward III, Steven J. Golub, Robert Charles Clark, Ellis Jones, Vernon E. Jordan, Jr., Anthony Orsatelli (collectively the "Individual Defendants") and nominal defendant Lazard, with the consent of defendant Goldman Sachs & Co. ("Goldman") (collectively "Defendants") removed the action to federal court, invoking the Court's original jurisdiction under 28 U.S.C. § 1331 and the Securities Litigation Uniform Standards Act ("SLUSA"), Pub. L. No. 105–353, 112 Stat. 3227 (codified in scattered sections of 15 U.S.C.). The Sung Action was thereupon consolidated with another shareholder derivative action pending before this Court, *Pease v. Lazard,* No. 05 Civ. 5785, 2005 WL 1803392 (S.D.N.Y. filed June 21, 2005) (the "Pease Action"), pursuant to the Court's orders of August 8, 2005 and September 26, 2005. Sung filed the instant motion seeking to remand the Sung Action to state court and for an award of attorneys' fees and costs. For the reasons set forth below, Sung's remand motion is granted.

### I. BACKGROUND[1]

Nominal defendant Lazard is a financial advisory and asset management firm. On May 4, 2005, Lazard issued approximately 34 million shares of its common stock at $25 per share in an IPO (the "Lazard IPO"). Sung alleges that defendants Wasserstein and Goldman knew or should have known that the market would not support this share price absent manipulation, that defendant Goldman made secret agreements with hedge funds pursuant to which the hedge funds would buy the Lazard stock at $25 per share and immediately sell them back to Goldman, thereby creating the appearance of a market for the shares at the offering price, and that a subset of the Individual Defendants "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings." (Compl.¶¶ 20–24.) Based on these allegations, Sung asserts claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, aiding and abetting a breach of fiduciary duty, and professional negligence, all grounded on New York state law.

In addition to the Sung and Pease Actions, five class actions based on the events surrounding the Lazard IPO are pending before this Court. Another shareholder derivative action based on these events is pending before the District Court for the Eastern District of New York.

### II. DISCUSSION

Pursuant to the general removal statute, 28 U.S.C. § 1441(b), "a state court defendant may remove a case to federal court ... only if the plaintiff's claims could originally have been brought there." *Barbara v. New York Stock Exch., Inc.,* 99 F.3d 49, 53 (2d Cir.1996). Defendants assert that the Sung Action could have been com-

---

1. The factual recitation below derives from the Complaint ("Compl.") and the Lazard Defendants' Memorandum of Law in Opposition to the Plaintiff's Motion to Remand, dated Sept. 21, 2005 ("Def. Mem."). Except as specifically quoted or otherwise cited, no further reference to these documents will be made.

menced in federal court pursuant to 28 U.S.C. § 1331 (" § 1331"), which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In addition, SLUSA has its own removal provisions, under which actions covered by SLUSA that are filed in state court may be removed to federal court. *See* 15 U.S.C. §§ 77p(c), 78bb(f)(2). Defendants contend that these provisions apply to the instant action.

## A. *FEDERAL QUESTION JURISDICTION*

### 1. *Legal Standard*

■ Section 1331 grants federal courts jurisdiction over actions arising under federal law. "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). That is, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "Thus, 'a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (alteration in original) (quoting *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841).

■ Courts have used two tests to determine whether an action presents a federal question. *See West 14th St. Commer-*

*cial Corp. v. 5 W. 14th Owners Corp.,* 815 F.2d 188, 192 (2d Cir.1987). First, federal question jurisdiction exists when federal law creates the cause of action. *See Franchise Tax Bd.,* 463 U.S. at 8–9, 103 S.Ct. 2841; *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The Supreme Court has cautioned that the vast majority of cases falling within the statutory grant of federal question jurisdiction are covered by this test, *see Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229, while recognizing that the test "has been rejected as an exclusionary principle," *Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. 2841, in that it does not describe which cases are beyond district court jurisdiction. This test can best be understood as involving an inquiry into whether the right or remedy that plaintiff is asserting is strictly a function of substantive state law, that is, whether the underlying cause of action is created by state law. If this is the case, on looking at the elements of the state cause of action, none will explicitly require application of federal law, although collateral questions or interpretations implicating federal law may also be involved that could affect, even if not necessarily dispose of, the state law action. For example, if such a case were to go to a jury, the jury would be instructed only on the substantive content of state law that established the rights and remedies for liability upon which the action depends, as well as applicable defenses.

■ The second test posits that a case may also arise under federal law when "some substantial, disputed question of federal law is a necessary element" of a state claim in a well-pleaded complaint, and thus an adjudication of the merits of the underlying dispute, and the existence, or not, of a right or remedy asserted, depends on the interpretation or application of federal law. *Id.* at 13, 103 S.Ct.

2841. As the Supreme Court articulated this inquiry, a case may be said to arise under federal law "where the vindication of a right under state law *necessarily* turn[s] on some construction of federal law." *Id.* at 9, 103 S.Ct. 2841 (emphasis added). However, this statement "must be read with caution." *Merrell Dow*, 478 U.S. at 809, 106 S.Ct. 3229 (noting that while the central issue in *Franchise Tax Board* was the meaning of a federal statute, the Court nevertheless "concluded that federal jurisdiction was lacking" there). "[C]ourts have found that removal to federal court is proper where the state action simply provides the vehicle for 'the vindication of rights and ... relationships created by federal law.'" *Donovan v. Rothman*, 106 F.Supp.2d 513, 517 (S.D.N.Y.2000) (alteration in original) (quoting *West 14th St.*, 815 F.2d at 196).

Courts have referred to this second test as the artful pleading doctrine, a legal drafting technique that may also be characterized as creative concealment, a "corollary to the well-pleaded complaint rule, [which] prevents a plaintiff from avoiding removal by framing in terms of state law a complaint the real nature of which is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint." *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir.1998) (alteration, citation and internal quotation marks omitted). " '[A] complaint which appears to be grounded solely in state law actually may be federal in nature, and thus removable, if its true nature has been disguised by the plaintiff's artful pleading.' " *Id.* at 55 (alteration in original) (quoting *Traveler's Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.1986)).

After "[e]xamining only those allegations which are properly raised in a well-pleaded complaint, [a] court must then determine whether the substance of those allegations raises a federal question." *West 14th St.*, 815 F.2d at 192. The Second Circuit has offered further guidance: "To determine when the federal element is deemed sufficiently substantial [courts] must look to the nature of the federal interest at stake." *Id.* at 193 (citing *Merrell Dow*, 478 U.S. at 814 n. 12, 106 S.Ct. 3229). Courts must consider whether a question of federal law is a substantial and necessary element "with an eye to practicality and necessity." *Franchise Tax Bd.*, 463 U.S. at 20, 103 S.Ct. 2841. In this task the Court is guided by the Supreme Court's observation in *Gully v. First National Bank:*

> What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

299 U.S. 109, 117–118, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (Cardozo, J.) (citations omitted).

Though this guidance may at first seem reassuring, in fact this case requires the Court to delve into the thicket of an oft-

visited yet unsettled area of the law. The Supreme Court has observed that the concept of federal question jurisdiction lacks a " 'single, precise definition' ...; rather 'the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' " *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd.,* 463 U.S. at 8, 103 S.Ct. 2841).

Although courts in this Circuit have made various pronouncements regarding determining when removal is justified despite the lack of any explicitly federal claim on the face of the well-pleaded complaint, these tests are of limited assistance when it comes to their application to the facts presented here. The Court finds itself in an area without settled or clear answers. It is well established that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813, 106 S.Ct. 3229. But this statement is somewhat circular, insofar as it begs the question of when a federal issue's presence in a state cause of action does or does not confer federal question jurisdiction.

■ On the one hand, "when Congress has provided no private right of action under a federal statute, the borrowing of that federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction." *West 14th St.,* 815 F.2d at 193; *Merrell Dow,* 478 U.S. at 817, 106 S.Ct. 3229. To understand this statement, it is important to note the distinction (if one can be found) between "the borrowing of [a] federal law as a standard of conduct" and the presence of a federal issue in a state law complaint more generally. In *Merrell Dow,* one of the six state claims asserted by the plaintiffs expressly referenced federal law; it alleged that a pre-

scription drug was misbranded in violation of the Federal Food, Drug, and Cosmetic Act, and that this violation "constitute[d] a rebuttable presumption of negligence." *Id.* at 806, 106 S.Ct. 3229. In other words, the plaintiffs argued that the defendant's product misbranding, while violating a federal law, constituted negligence per se under *state* law. Thus, it was from the elements of that state law cause of action, rather than directly from the federal statute, that arose the rights and remedies plaintiffs sought, and correspondingly defendant's liability.

Conversely, the Second Circuit has found that the presence of federal issues in a complaint on its face solely based on state law may be sufficiently substantial even when the plaintiff has not invoked nor would otherwise independently have a federal right of action. *See, e.g., D'Alessio v. New York Stock Exch., Inc.,* 258 F.3d 93 (2d Cir.2001); *West 14th St.,* 815 F.2d at 196. This guidance suggests that the incorporation of a federal law as a standard of conduct in a state claim, whether explicitly or implicitly, is merely a subset of the possible ways federal law may be at issue in a state-created action.

■ In consequence, despite the Second Circuit's apparent finding that because a federal act "expressly grants plaintiffs the right to bring an action in federal court ..., plaintiffs' well-pleaded complaint presents a federally-created cause of action," *West 14th St.,* 815 F.2d at 193, it would be erroneous to assume that the existence of a federal private cause of action that a particular plaintiff is entitled to assert automatically confers federal jurisdiction for removal purposes when the plaintiff chooses not to invoke that right. Thus a plaintiff, as master of her complaint, is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus,* 138 F.3d at 52.

All that can be gleaned from the preceding discussion is that, although the existence of a federal right of action may in some circumstances weigh in favor of finding federal jurisdiction to support removal of a state action to federal court, it is neither necessary nor sufficient to confer jurisdiction in all circumstances.

The Second Circuit has determined that "the interpretation and application of the federal securities laws ... [are] areas of undisputed strong federal interest." *D'Alessio,* 258 F.3d at 100. Evidencing this strong federal interest, numerous private rights of action under the federal securities laws have been created by Congress, *see* § 15 U.S.C. 77k, and where not explicitly provided, have been recognized by courts, *see Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (noting that "[i]t is now established that a private right of action is implied under § 10(b) [of the Securities and Exchange Act of 1934]"). This interest is further manifested by recent Congressional preemption of certain state law class actions regarding the purchase or sale of federal securities. *See* 15 U.S.C. § 78bb(f). In this respect, this case is distinguishable from *Merrell Dow,* where the determination that the federal interest was insufficient to assert federal jurisdiction was based in large part on the lack of a federal private right of action. However, as also already noted above, the existence of some federal private right of action that a particular plaintiff could claim is insufficient, without more, to confer federal question jurisdiction to justify removal of a state court lawsuit. In this Court's view, a significant, and perhaps controlling, consideration for that purpose is how central the issue of federal securities law is to resolving the Sung Action. Because relevant precedent leaves the way to resolution of this issue

unclear, it is useful to set out the pertinent legal arguments and relevant authorities.

### 2. Applicable Precedent

#### a. Second Circuit Precedents

The parties to the instant action rely extensively on two Second Circuit cases addressing remand motions, *Barbara,* 99 F.3d 49, and *D'Alessio,* 258 F.3d 93. Although the facts underlying those cases bear little resemblance to the circumstances here, the Second Circuit's analysis of remand motions when federal securities laws are involved, and various pronouncements by the court in that context make those cases relevant to the issue at hand. Another Second Circuit case, *Marcus,* 138 F.3d 46, also provides relevant guidance.

Both *Barbara* and *D'Alessio* concerned questions of whether the New York Stock Exchange ("NYSE") complied with the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act") or rules and regulations promulgated thereunder. Thus, a brief overview of the relationship between the NYSE and those laws, rules and regulations may be helpful.

The NYSE is a New York non-profit corporation registered with the Securities and Exchange Commission ("SEC") pursuant to the Exchange Act. As a "self-regulatory organization" under the Exchange Act, "it has a duty to promulgate and enforce rules," which are subject to SEC approval,

> governing the conduct of its members.... In accordance with the statutory scheme, the [NYSE] conducts disciplinary proceedings when a member, or a person associated with a member, is suspected of violating federal securities laws or internal [NYSE] rules or regulations.... [T]he [Exchange Act] requires that these disciplinary proceedings be conducted in compliance both with the

[Exchange] Act and with the [NYSE's] rules and regulations.

*Barbara,* 99 F.3d at 51.

Plaintiffs rely heavily on *Barbara.* There, Barbara, a former member of the NYSE, brought suit in state court, alleging state common law violations in connection with the NYSE's alleged misconduct relating to disciplinary proceedings against him. The NYSE removed the action to federal court, and Barbara apparently did not challenge the removal. On appeal of a judgment against Barbara, the Second Circuit raised the issue of subject matter jurisdiction *sua sponte* and determined that Barbara's claims could not have originally been brought in federal court. The court found that, even assuming that Barbara's right to recover was contingent on his proving that the NYSE had violated its internal rules, federal question jurisdiction over his claims was lacking. Following the Supreme Court's directive to "make principled, pragmatic distinctions," *id.* at 54 (citations and internal quotation marks omitted); *see also Gully,* 299 U.S. at 118, 57 S.Ct. 96, the Circuit Court determined that the federal issues in the complaint were not substantial enough to "arise under" federal law for purposes of § 1331. The court based this determination on two grounds: first, that Barbara would have had no private right of action under the applicable federal statute to remedy the wrongs he claimed, and second, that the rules of a securities exchange, which is essentially a private business organization (albeit a heavily federally regulated one), were to be interpreted pursuant to ordinary principles of contract law, "an area in which the federal courts have no special expertise." *Barbara,* 99 F.3d at 55.

In turn, Defendants in this action rely heavily on *D'Alessio,* which is in some sense in conflict with *Barbara.* There, the plaintiff filed state law tort claims in state court, alleging that the NYSE and others "conspired to violate applicable [federal] statutory and regulatory prohibitions governing unlawful trading ... by concocting a phoney interpretation of these provisions and knowingly disseminating that incorrect interpretation to the detriment of D'Alessio and other floor brokers." *D'Alessio,* 258 F.3d at 97 (internal quotation marks and alteration omitted). The NYSE removed the action. The Second Circuit found on appeal that "the gravamen of D'Alessio's state law claims is that the [defendants] conspired to violate the federal securities laws and various rules promulgated by the NYSE and failed to perform [their] statutory duty, *created under federal law,* to enforce [NYSE] members' compliance with those laws." *Id.* at 101. Thus, "resolution of D'Alessio's claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under [federal law]." *Id.* at 101–02. " '[U]pon [the federal statute's] construction the vindication of rights and definition of relationships *created by federal law* depends.' " *Id.* at 102–03 (alteration in original) (quoting *West 14th St.,* 815 F.2d at 196). The *D'Alessio* court relied heavily on one particular fact: that the relationship between the plaintiff and the defendants was created by federal law, suggesting that this consideration may be one criterion for determining when the presence of a federal issue in a state-created cause of action is sufficiently substantial to confer federal question jurisdiction.

In *Marcus,* 138 F.3d 46, two class actions were filed in state court alleging state statutory and common law violations regarding defendant AT&T's billing practices. Both cases were removed to federal district court, and one group of class action plaintiffs moved to remand, while the other amended its complaint to include a federal

common law fraud claim. On appeal of the district court's ruling denying the remand motion, the Second Circuit reiterated that "[t]he presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule," *id.* at 52, and articulated the rule as "provid[ing] that federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law . . . and only when plaintiff's well-pleaded complaint raises issues of federal law." *Id.* (citations omitted). The court went on to note that the federal interest in preventing misrepresentation in telecommunications, as evidenced by the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 151 *et seq.,* was not unique, and that "states may have an equal or greater interest . . . as manifested by state consumer protection laws." *Id.* at 54.

The Circuit Court found that the plaintiffs' claim for breach of warranty, although styled as a state common law claim, served as a basis for federal jurisdiction under the artful pleading doctrine. By bringing a breach of warranty claim plaintiffs sought to enforce "the terms of the agreements between AT&T and its customers," and the only sources for those agreements were "tariffs filed in accordance with the FCA." *Id.* at 56. Thus "[t]he legal relationship between AT&T and its customers [was] defined by the tariffs." *Id.* (citation and internal quotation marks omitted). For this reason, and because the tariffs were considered law, and not merely contracts, the court found federal jurisdiction was proper. "[T]he breach of warranty claim necessarily

raise[d] a substantial federal question." *Id.*[2]

As in *D'Alessio,* the Circuit Court focused on the fact that the document that created the relationship between the parties was a creature of federal law. This point provides further support for the observation, made by another court in this district, that "removal to federal court is proper where the state action simply provides the vehicle for the vindication of rights and relationships created by federal law." *Donovan,* 106 F.Supp.2d at 517 (citation and internal quotation marks omitted).

### 3. *Other Relevant Authority*

#### a. *Federal Securities Law as a Significant Federal Issue*

In *Finance & Trading, Ltd. v. Rhodia S.A.,* No. 04 Civ. 6083, 2004 WL 2754862 (S.D.N.Y. Nov. 30, 2004), individual investors brought state law claims of fraud and negligent misrepresentation in the sale of stock. The complaint alleged that the individual defendants devised a fraudulent scheme to boost the share value of the defendant company, Rhodia S.A. ("Rhodia"), and that the plaintiffs were thereby induced to invest in Rhodia. The alleged fraudulent and negligent misrepresentations were made at meetings between Rhodia's Chief Executive Officer and a director of one of the plaintiff companies, as well as in Rhodia's prospectus filed with the SEC. The defendants removed to federal court, claiming that the "plaintiffs' claims necessitate[d] the interpretation of federal securities law, and thus belong[ed]

---

**2.** Although the Circuit Court did not explicitly discuss the basis for its jurisdiction over the remaining, state law claims, the district court found that, since all claims arose from a common set of operative facts, supplemental jurisdiction existed for any claims not arising under federal law. *See Marcus v. AT&T Corp.,*

938 F.Supp. 1158, 1169 (S.D.N.Y.1996). Therefore the Second Circuit's affirmance of "so much of the district court's order that denied the *Marcus* appellants' motion to remand" would seem to incorporate this finding. *See Marcus,* 138 F.3d at 56.

exclusively in federal court." *Id.* 2004 WL 2754862 at *3. The plaintiffs then moved to remand the action to state court.

The court discussed two situations where removal is justified "absent a federal claim on the face of the well-pleaded complaint:" complete preemption, and instances "where the plaintiff's state law claim necessarily turns on the resolution of a substantial federal question." *Id.* 2004 WL 2754862 at *4.

The defendants argued that, because Section 27 of the Exchange Act provides for exclusive federal jurisdiction over " 'actions brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder,' " *id.* 2004 WL 2754862 at *5 (alteration in original) (quoting 15 U.S.C. § 78aa), federal jurisdiction existed over the plaintiffs' claims. The court rejected this argument, finding that the duties and liabilities the plaintiffs sought to enforce were not exclusively created by federal law, and that the Exchange Act did not preempt state law in this regard.

The court next examined whether the complaint raised a substantial federal question. The court articulated this test as determining whether "plaintiffs attempted to avoid removal 'by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.' " *Id.* 2004 WL 2754862 at *6 (quoting *Marcus,* 138 F.3d at 55 (alteration in original)). The court then found that the primary test used by the Second Circuit in determining "the substantiality of the federal interest is whether the state action simply provides the vehicle for the

vindication of rights and relationships created by federal law.' " *Id.* 2004 WL 2754862 at *6 (internal quotation marks and alteration omitted) (quoting *Donovan,* 106 F.Supp.2d at 517).

The court found that plaintiffs' claims did not necessarily present a substantial federal question, because "[a]ssessing whether defendants committed fraud and negligent misrepresentation that happened to occur during a sale of securities does not implicate any federal law." *Id.* After discussing the elements of state fraud and negligent misrepresentation claims, the court determined that these claims did "not depend on any rights or causes of action created by federal law" even though some of the alleged misrepresentations were contained in "prospectuses filed with the SEC." *Id.* 2004 WL 2754862 at *7.

The court distinguished *D'Alessio,* finding that "the *D'Alessio* Court's conclusion was inescapable, because the claim being alleged in that case involved an act that could be interpreted only in relation to federal securities laws." *Id.* In contrast, a court would not need to look to federal securities laws to determine whether the statements in the Rhodia prospectus were misleading, as the statements could be evaluated under state common law standards. Furthermore, "even if a court did decide to … use a federal standard as a guide to assess defendants' liability, federal question jurisdiction still would not be mandatory" because " 'the borrowing of … federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction.' " *Id.* 2004 WL 2754862 at *8 (quoting *West 14th St.,* 815 F.2d at 193).[3]

---

**3.** This citation from *West 14th Street* is incomplete and may give rise to misinterpretation, as an omission at the beginning of the sentence quoted alters the import of the quoted text. The full sentence from which the quotation is taken reads, *"Merrell Dow* held that *when Congress has provided no private right of action under a federal statute,* the borrowing

Finding that state "common law [was] fully capable of resolving plaintiffs' claims," *id.*, the court remanded the action.

In *New York v. Justin*, 237 F.Supp.2d 368 (W.D.N.Y.2002), the State of New York brought an action in state court alleging that a securities broker and others violated state "blue-sky" and anti-fraud laws through their involvement in a fraudulent investment scheme. Upon removal of the case to federal court, one of the defendants, Financial National Investment Corporation ("FNIC"), which the complaint accused of failure to provide the heightened level of supervision of its securities salespeople required by securities industry standards, opposed the State's motion to remand. Relying heavily on *D'Alessio*, FNIC argued that the federal district court had jurisdiction over the case (1) because its heightened supervisory duty was created and defined exclusively by the Exchange Act and rules and regulations promulgated thereunder; and (2) because any determination of what level of supervision was required by industry standards would "turn on the resolution of substantial, disputed questions of federal law." *Id.* at 373. The district court found that "the duty to supervise securities salespeople" was created not only by federal law but also by state statutory law and common-law principles. *Id.* Since the plaintiff brought claims under state law, the issues in the case concerned whether state law imposed a duty to supervise securities salespersons and whether FNIC violated that duty. The court determined that the potential use of federal law and rules to determine industry standards was "not sufficient to establish that 'some substantial, disputed question of federal law is a necessary element of one of the well-

pleaded·state claims.' " *Id.* at 374 (quoting *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841).

b. *Significance of the Federal Issue When Actions Based on the Same Factual Circumstances Are Pending in Federal Court*

Several district courts have addressed remand motions in shareholder derivative actions originally filed in state court where federal securities law actions based on the same underlying facts are pending in federal court. These courts have reached opposite conclusions that are seemingly based not on distinctions in factual circumstances but on differing applications of the various "arising under" tests. In each of the following cases, a plaintiff who had brought state law claims in state court derivatively on behalf of a corporation moved to remand the suit to state court after the defendants had removed the action to federal court, where federal securities law actions were pending.

Under these procedural circumstances, some courts have remanded the action to state court. *See, e.g., Gargiulo v. Decker*, No. SACV05–00103, 2005 WL 755771 (C.D.Cal. March 30, 2005); *Fathergill ex rel. Michaels Stores, Inc. v. Rouleau*, No. 03–CV–0879–D, 2003 WL 21467570 (N.D.Tex. June 23, 2003); *Coykendall v. Kaplan*, No. C 02–02287 CW, 2002 WL 31962137 (N.D.Cal. Aug. 1, 2002). For example, in *Gargiulo*, claims very similar to those brought by Sung were brought under California statutory and common law. Examining the complaint closely, the district court found that although the complaint's recitation of causes of action did not allege any violations of federal securities laws, violations of federal securities laws were alleged by reference to allega-

of that federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdic-

tion." *West 14th St.*, 815 F.2d at 193 (emphasis added).

tions made in other portions of the complaint. For instance, a cause of action for breach of fiduciary duty was alleged, and another portion of the complaint defined that duty as including "disseminating truthful and accurate statements to the SEC and investing public." *Id.* 2005 WL 755771 at *2. Further, like the Sung complaint, the complaint alleged that as a result of the defendant's actions the company in question was the subject of "several class action lawsuits that allege violations of federal securities laws" thereby subjecting the company to liability. *Id.* In addition, the complaint alleged that some of the defendants participated in disseminating "false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings." *Id.* (internal quotation marks and alteration omitted). However, the court found that none of these references was an essential element of any of the claims found in the complaint, that the duty to obey federal securities laws was only one of many duties (including the duty to obey state laws) allegedly violated by the defendants, and that any damages flowed not only from the federal securities class actions but also from costs of internal investigations and directly from the defendants' violations of their duties of loyalty and good faith. The court distinguished *D'Alessio,* finding that, unlike the case before it, where both state and federal law imposed duties on the defendants, the claims in *D'Alessio* "were premised on duties derived exclusively from federal law." *Id.* 2005 WL 755771 at *4. The court remanded the action to state court.

In contrast, cases with similar factual and procedural circumstances denied remand motions in shareholder derivative actions when federal securities actions based on the same underlying facts were pending in federal court. *See, e.g., Weitschner v. Gilmartin,* No. 02–4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003); *Gobble v. Hellman,* No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D.Ohio March 26, 2002).

For instance, in *Weitschner,* numerous federal securities law class actions, as well as at least two state shareholder derivative actions, were filed after a report that the nominal defendant, Merck & Co., Inc. ("Merck"), had violated "Generally Accepted Accounting Principles ... thereby resulting in an overstatement of its total economic activity." *Id.* at *2. Weitschner, a shareholder, brought claims for breach of fiduciary duty, misappropriation of confidential information for personal profit, contribution and indemnification. The complaint alleged that the breach of fiduciary duty included failure to "supervise the issuance of ... press releases and public filings to ensure that they were truthful and accurate and conformed with federal and state law." *Id.* In addition, it alleged that damages, including, *inter alia,* that Merck was the subject of federal securities fraud class actions, resulted from the breach. Determining that these claims were primarily based on the defendants' "failure to adequately monitor Merck's financial disclosures in accordance with federal securities laws and regulations" *id.* at *7, the court found that the case involved "a strong federal interest and [would] require interpretation of federal law." *Id.* at *9. In contrast to the *Finance & Trading* and *Gargiulo* courts, the court rejected Weitschner's argument that "interpretation of federal law [was] not necessary to the resolution of the action" because the defendants' conduct also violated state law. *Id.* at *8. In reaching its holding, the court found *D'Alessio* indistinguishable from the case before it, based, apparently, on its finding that the allegations supporting Weitschner's claims were primarily grounded on alleged violations of federal

law, just as D'Alessio's claims were "premised, in large part, on the NYSE's failure to enforce and monitor compliance by its members with the Exchange Act and the rules and regulations thereunder." *D'Alessio,* 258 F.3d at 103.

### 4. *The Artful Pleading Doctrine*

As discussed above, the precise role that federal law must play in a state-created cause of action in order for federal question jurisdiction to exist is unclear. However, the applicable precedents do suggest a way of looking at state-created causes of action to determine whether they are in fact subject to federal question jurisdiction.

Even if a right or remedy plaintiff asserts and claims is grounded on state law, if on close examination, that cause of action stands or falls on the application of some federal doctrine or law, there is federal question jurisdiction over the claim. Insofar as the cause of action is fundamentally dependent on federal law for its success, one can say that it fits the "arising under" test.

As a corollary to this doctrine, courts may distinguish the task of *interpreting* federal law, that is, determining what a particular federal law means, in the course of deciding a state cause of action, from *applying* federal law as a necessary element of a state cause of action. In the latter, but not the former, situation, federal question jurisdiction exists.

### B. *APPLICATION TO THE COMPLAINT*

These observations apply to the Sung Action in the following ways. The Sung complaint alleges counts for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, aiding and abetting a breach of fiduciary duty, and professional negligence against the Defendants. All claims are classic state causes of action. Hence the question for the court is whether any claims necessarily implicate federal law as an indispensable element upon which the action stands or falls.

■ First, more than one of Sung's causes of action rests in part on the factual allegation that Defendants filed a misleading prospectus. The filing of a misleading prospectus may constitute evidence of breach, but the breach of fiduciary duty claim itself does not stand or fall based on the alleged misrepresentation in the prospectus. In the corporate context, breach of fiduciary duty under state law involves a violation of corporate directors' role as "guardians of the corporate welfare.... Actions that may accord with statutory requirements are still subject to the limitation that such conduct may not be for the aggrandizement or undue advantage of the fiduciary." *Alpert v. 28 Williams St. Corp.,* 63 N.Y.2d 557, 483 N.Y.S.2d 667, 473 N.E.2d 19, 25 (1984) (citations and internal quotation marks omitted). These elements are unrelated to federal law. The filing of a misleading statement in a prospectus may be a factual predicate for breach, but it is not an element upon which the claim stands or falls. Any failure to comply with federal securities laws "simply provide[s] the factual basis for [Sung's] state law claims." *Schappel v. UICI,* No. 99–CV–1544–G, 1999 WL 1101262, at *2 (N.D.Tex. Dec. 3, 1999).

■ The duties of directors to corporations on whose boards they sit is created by state common law. Further, the relationship between a director and a corporation is not "created by federal law." *West 14th St.,* 815 F.2d at 196. This is true even if breach of the fiduciary relationship is predicated on the directors' alleged violation of federal law. *See Donovan v.*

*Rothman,* 106 F.Supp.2d 513, 518 (S.D.N.Y.2000). To be sure, Sung's claims arise in significant part from allegedly false and misleading statements made on a prospectus, a document that is required by federal securities regulations. However, that the statements were made in a federally required document does not change the inquiry whether, standing alone, they were false or misleading as a necessary element of a cause of action under state law. *See Finance & Trading,* 2004 WL 2754862, at *8. In addition, in no count in Sung's complaint does an alleged violation of federal securities law form the only basis for the alleged violation of state law. For instance, the "duty to promptly disseminate accurate and truthful information" regarding the company (Compl.¶ 32), which, Sung posits, derives from Lazard's status as a publicly held company, is only one of several duties the complaint recites. Certainly, Sung's claims would be strengthened by resolution of federal securities law issues in his favor. But it is a stretch to say that resolution of contested federal issues is *necessary* to the adjudication of any claims found in the complaint. No cause of action here necessarily stands or falls based on a particular interpretation or application of federal law.

The trial court will need to address federal issues in calculating damages, as Sung has alleged that Defendant's actions have subjected Lazard to federal securities class actions. However, it is not necessary for the trial court to determine whether Lazard is liable on allegations made in the federal lawsuits. Instead, it would be more appropriate for the trial court to stay any decision as to damages (assuming liability is established) until this Court determines the extent of any liability found in the federal actions.

## C. *SLUSA*

Defendants further argue that removal is proper under SLUSA. Specifically, Defendants argue that the instant action is a "covered class action" as defined by SLUSA, and is therefore subject to SLUSA's removal and dismissal provisions.

"SLUSA is one of several federal securities statutes passed in the latter half of the 1990s which were intended to promote uniformity in the securities markets." *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107 (2d Cir.2001). In 1995 Congress determined that "abusive and meritless" private securities lawsuits were undermining American capital markets. H.R. Conf. Rep. No. 104–369, at 31–32 (1995). In response, Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No 104–67, 109 Stat. 737 (codified in scattered sections of 15 U.S.C.), "to deter strike suits of dubious merit filed for their vexation value, or as instruments intended to extract large settlements through unfounded assertions of fraud." *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F.Supp.2d 371, 418 (S.D.N.Y.2001). To that end, the PSLRA imposes heightened pleading standards in any private securities fraud action arising under the statute, *see* 15 U.S.C. §§ 78u–4(b)(1) & (2), directs courts to impose a stay on discovery pending decision on any motions to dismiss, *see* 15 U.S.C. § 78u–4(b)(3)(B), and imposes limits on recovery.

However, Congress soon determined that private securities class action plaintiffs had shifted their claims from federal to state court in an effort to avoid the PSLRA's stringent pleading requirements, thereby "preventing the [PSLRA] from achieving its full objectives." 15 U.S.C. § 78a. Congress enacted SLUSA in 1998 "in response to th[is] perceived failure of [the PSLRA] to curb abuses of federal securities fraud litigation arising under the

Securities Act of 1933 . . . and the Exchange Act." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 31 (2d Cir.2005), *cert. granted,* —— U.S. ——, 126 S.Ct. 34, 162 L.Ed.2d 932 (2005).

SLUSA "make[s] federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and . . . mandat[es] that such class actions be governed exclusively by federal law." *Lander,* 251 F.3d at 108 (citing 15 U.S.C. § 77p(b)-(c)). SLUSA provides that

> [n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b) (applying to Securities Act); *see also* 15 U.S.C. § 78bb(f)(1) (almost identical language applying to Exchange Act). The statute further provides for removal of any such action to federal court. 15 U.S.C. §§ 77p(c), 78bb(f)(2). In sum, SLUSA provides for the removal and dismissal of (1) any "covered class action" (2) filed in state court (3) based on state law (4) alleging an untrue statement "or omission of material fact," or use of "any manipulative or deceptive device, in connection with the purchase or sale" (5) of a "covered security." *Id.* At issue here is the first element, whether the Sung Action constitutes a "covered class action."

### 1. *Covered Class Action*

Defendants argue that the instant action is removable as a "covered class action" as defined by SLUSA. Defendants acknowl-edge that the Sung Action is, on its face, a shareholder derivative action. However, they argue that SLUSA's requirement that the Court "look beyond the face of the complaint to analyze the substance of the allegations made," *Dabit,* 395 F.3d at 34, compels the Court to ignore the form of action Sung chose and find that the Sung Action is actually a "covered class action."

SLUSA defines a "covered class action" as

> (i) any single lawsuit in which—
>
> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
>
> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—
>
> (I) damages are sought on behalf of more than 50 persons; and
>
> (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 77p; *see also* 15 U.S.C. 78bb. None of these conditions are met here. Sung seeks to recover damages not as a representative of a class or of all others similarly situated, but derivatively on be-

half of Lazard. Were this all SLUSA had to say on the matter, the Court might be tempted to ignore these facts, given legislative history suggesting that Congress intended "that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S.Rep. No. 105–182, at 8 (1998); *see Arlia ex rel. Massey Energy Co. v. Blankenship,* 234 F.Supp.2d 606, 612 (S.D.W.Va.2002). However, this directive cannot overcome the plain language of the statute.

### 2. *Exemption of Exclusively Derivative Actions*

 "The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). When statutory language is clear, it is also, barring exceptional circumstances, the end of the inquiry. *See Lander,* 251 F.3d at 110. Here, Congress carved out an explicit exception from its definition of a covered class action. "[T]he term 'covered class action' does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation." 15 U.S.C. §§ 77p, 78bb. Whatever expansive meaning Congress may have intended courts to afford the term "covered class action," it does not extend to exclusively derivative actions such as this one.

It is true that SLUSA "completely preempt[s] the field of *certain types* of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction" over those claims. *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 123 (2d Cir.2003) (emphasis added). Therefore, SLUSA "provides in practice an exception to the well-pleaded complaint rule, such that *when SLUSA's*

*conditions have been satisfied,* the plaintiff has necessarily invoked federal question jurisdiction, even though he [or she] did not wish to." *Dabit,* 395 F.3d at 33–34 (alteration in original) (emphasis added) (citation and internal quotation marks omitted).

Here, not only have SLUSA's conditions not been satisfied, in fact, the statute's specific exception for derivative actions has been called into play. Sung has brought a shareholder derivative action under state law, and has brought all claims derivatively. Furthermore, the relief Sung seeks is on behalf of Lazard. Thus, the instant action is an "exclusively derivative action" beyond SLUSA's preemptive scope. It is not removable pursuant to SLUSA.

This finding will not frustrate Congress' purpose of providing "uniform national rules for class action litigation involving our national capital markets." *Lander,* 251 F.3d at 111 (quoting H.R. Conf. Rep. No. 105–803 (1998)). First, this case is not a class action. Second, as discussed in section II.B above, the standards that must be applied to this case are the state law standards involved in the common law claims alleged in the complaint.

### D. *DAMAGES*

 Sung requests attorney's fees and costs incurred as a result of Defendants' removal, pursuant to 28 U.S.C. § 1447(c). The Supreme Court has recently articulated a standard for determining whether fees and costs should be awarded, holding that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.,* —— U.S. ——, 126 S.Ct. 704, 708, 163 L.Ed.2d 547 (2005). As other courts in this Circuit have found in grappling with whether

there is federal question jurisdiction when no federal cause of action appears on the face of plaintiff's well-pleaded complaint, " '[t]his area of the law is extremely complicated and the related jurisdictional issues are difficult to navigate.' " *Finance & Trading*, 2004 WL 2754862, at \*8 (alteration in original) (quoting *Foschi v. United States Swimming, Inc.*, 916 F.Supp. 232, 242 (E.D.N.Y.1996)). Although Defendants did not prevail in this action, the basis for removal was "objectively reasonable." *Martin*, 126 S.Ct. at 708. Therefore a grant of attorney's fees is inappropriate here.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion of plaintiff Jing Sung ("Sung") to remand this action to the Supreme Court of the State of New York, New York County pursuant to 28 U.S.C. § 1447 is **GRANTED**; and it is further

**ORDERED** that Sung's motion for costs and fees incurred as a result of the removal is **DENIED**; and it is finally

**ORDERED** that the Clerk of Court is directed to close this case.

**SO ORDERED.**